WILLIAM H. MOORE *v.* ALMA M. MOORE

5-4046                                    409 S. W. 2d 830

Opinion delivered December 19, 1966

[Rehearing denied January 23, 1967]

*Clayton N. Little* of Little & Enfield, for appellant.

*Putman, Davis & Bassett,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, William H. Moore, instituted suit for divorce against the appellee, Alma M. Moore, alleging general indignities on the part of the appellee. Mrs. Moore filed a general denial, and counter-claimed, seeking a divorce on the grounds of general indignities and habitual drunkenness. Both parites sought a division of property rights. The case proceeded to trial, and at the conclusion thereof, the court found that each had established grounds for divorce with sufficient corroboration, but the complaint and counter-claim were both dismissed on grounds of recrimination. The court then found that the alternative prayer of appellee for separate maintenance should be granted, that appellant should not be required to make

any monthly support payments to her, but that Mrs. Moore should be entitled to the use and possession of the home owned by the parties near St. Paul, Arkansas, including the personal property located therein; further, that she should be required to account to appellant for one-half of any rents and profits derived from the operation of any profit-producing activities conducted on the property after the deduction of expenses, including mortgage payments, taxes, and insurance. From the decree so entered, appellant brings this appeal.

For reversal, it is first asserted that the trial court erred in permitting the appellee to amend her pleadings on the day of trial to pray for separate maintenance. We do not agree that this constituted error. Under our holdings, permitting amendments lies generally within the discretion of the court, and we will not disturb unless that discretion has been abused. In *Austin* v. *Dermott Canning Company*, 182 Ark. 1128, 34 S.W. 2d 773, quoting from an earlier case, we said that the granting of amendments "is to some extent a matter of discretion with the trial court, when the amendment does not change substantially the claim or defense, and this court will not disturb a ruling of the trial court in the exercise of that discretion when it clearly appears to have been observed."

Here, the amendment was filed before any testimony was ever taken, and really did not change the nature of the case, *i.e.*, the same proof was offered for the separate maintenance count as for the absolute divorce. Of course, if appellant thought that new issues were being presented, he could have made a motion for continuance, but this was not done.

It is next asserted that the court erred in refusing to grant appellant a divorce, and that this action was clearly against the preponderance of the evidence. Appellant's proof reflected that appellee had told persons that she had found her husband having relations with the cattle in the barn. The sheriff of Madison County

testified that Mrs. Moore had, on one occasion, sworn out an insanity warrant for appellant, and that he took Mr. Moore to a physician for examination. Following the examination, the doctor released appellant, and he was then released by the sheriff. Appellant asserts that these actions on the part of Mrs. Moore constituted indignities rendering his condition in life intolerable, and he also testified that she nagged him, called him names, and frequently accused him of being crazy. Relative to her charge of habitual drunkenness, he stated, "I never touched it during the week because you couldn't, but on weekends I used to have a few beers * * * just on weekends." He said he had "but very little" whiskey and wine. The witness stated that he had slapped his wife two or three times, but only after she had slapped him several times, and accused him of bothering the cattle.

Appellee testified that her husband would come in drunk, and on one occasion threatened her life with a butcher knife in his hand, struck her on many occasions, and had purchased large quantities of whiskey, wine and beer. "He drank so much wine, and he drank the beer, and he drank the whiskey, too, oh, that whiskey. He has drunk enough to float any boat." She contended that the allegations about her husband's indecent conduct were true, and she said that she told this to the neighbors. Wiley Harriman, a witness on her behalf, stated that he had seen appellant when he was drinking, though not drunk, and had smelled alcohol on him, and that on one occasion, Moore did state to him that his (Moore's) wife was a mean woman. Mrs. May Davis testified that she had seen marks of physical violence on Mrs. Moore, consisting of severe bruises, "black and blue," and one of appellant's witnesses stated on cross-examination that Moore called her on one occasion at her home about midnight to see if appellee was at her house, and made the statement that he was through with his wife, that she was just using him, and that he would not take her as a wife for a thousand dollars.

Appellant states that the court was incorrect in its

conclusion that the appellee established grounds for divorce, and it is his view that, at any rate, he and his witnesses made out a much stronger case for divorce than did appellee. Accordingly, appellant asserts that the Chancellor's conclusion that the divorce should be denied because of recrimination is against the preponderance of the evidence. It is his contention that the evidence is not evenly balanced, and that we should, on trying the case *de novo,* hold that appellant is entitled to the divorce.

Of course, whether the testimony was evenly balanced depends in large measure on just what facts appellant and his witnesses presented that the court believed, and likewise, the facts presented by appellee and her witnesses that the court believed. There was corroboration to some degree of most of the charges made, except the charge of reprehensible and degrading conduct attributed to the appellant by appellee, heretofore mentioned. The very nature of these alleged acts are such that corroboration of what appellee said she viewed would be difficult. We, of course, have no idea as to what the Chancellor believed—or disbelieved. From reading the transcript, one thing appears to be rather definitely established, *viz,* that neither party was entirely innocent. At least, we cannot say that the Chancellor's findings to that effect were against the preponderance of the evidence.

We have upheld the denial of divorces on grounds of recrimination. See *Martin* v. *Martin,* 225 Ark. 677, 284 S. W. 2d 647, and *Narisi* v. *Narisi,* 229 Ark. 1059, 320 S. W. 2d 757, and cases cited therein. In *Widders* v. *Widders,* 207 Ark. 596, 182 S. W. 2d 209, the reason for the rule was stated by this court in quoting the words of Lord Ardmillan, found in Bishop on Marriage, Divorce and Separation (Vol. 2, Page 165) as follows:

" * * * I think that there enters inherently and deeply into the contract of marriage an obligation before God and man that the contract shall be faithfully

kept by both of the contracting parties. Divorce is in my opinion a remedy provided for the innocent party, and is not intended for cases in which both parties are guilty."

We find no error in the court's refusal to grant either party a divorce.

The parties, during the period when they were living together, raised broilers for the Brown Hatchery, on a guaranteed per pound basis of $.05. Some of these chickens were being processed at the time the divorce action commenced. The court granted appellee the right to possession of the property, but required that she account to appellant for one-half of the profit of any business venture conducted thereon. It is contended that the court erred in granting her possession of the premises. This home is held as an estate by the entirety, and appellant asserts that each has the right to share the property. It is stated in the brief, "Appellant has a perfect right to return to the home and live there with appellee." Under the testimony heretofore set out, we think it apparent that it would be next to impossible for these people to live under the same roof; in fact, under such conditions, violence might well occur (indeed, the testimony reflects that it has already occurred). There was certainly no point in leaving the property vacant, and the court entered an equitable order in requiring that any profits be divided on an equal basis. There was authority to render this ruling. See *Cassell* v. *Cassell,* 211 Ark. 489, 200 S.W. 2d 965. In that case, we pointed out that the the decree as to the homestead and its contents did not amount to an order of permanent distribution, and vested no title in the wife. The same, of course, is true here, and, under the circumstances, we think the order was entirely appropriate.

Finding no reversible error, the decree is affirmed.