368 So.2d 63 (1979)
Lorraine W. BROWN, Individually, and As Personal Representative of the Estate of Andrew G. Brown, Deceased, Appellant,
v.
Elizabeth HANGER and the Florida National Bank and Trust Company at Miami, Appellees.
No. 78-217.
District Court of Appeal of Florida, Third District.
February 13, 1979.
Rehearing Denied March 19, 1979.
Knight, Peters, Pickle, Niemoeller & Flynn and J.T. Blackard, Miami, for appellant.
Starr W. Horton, Miami, Edmonson S. Couric, Jr., Coral Gables, for appellees.
Before KEHOE and SCHWARTZ, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
SCHWARTZ, Judge.
This appeal challenges a final judgment which denied a widow's attempt to reach funds in the hands of a person who had been given them by her husband during his lifetime, the source of which was allegedly property owned by the entireties by the husband and wife. We affirm in part and reverse in part.
The appellant Lorraine W. Brown is the widow of Dr. Andrew G. Brown. They had been married for over 40 years when he died in February, 1975. During the marriage Dr. and Mrs. Brown held several parcels of real property by the entireties. One such parcel, on Biscayne Boulevard in Miami, was sold in 1965 for over $65,000.00 cash. Another was an operating orange grove in Polk County which the couple had owned for many years and was still held by the entireties at Dr. Brown's death.
From 1959, until his death, the appellee, Elizabeth Hanger, had been Dr. Brown's medical assistant, secretary and friend. For some years before his death the doctor had been giving Ms. Hanger a great deal of money, well over $150,000.00 in all. These gifts took the form, among other things, of various savings accounts, life insurance, and a $50,000 inter vivos trust of which Ms. Hanger was the beneficiary and Florida National Bank and Trust Company the trustee. The source of these payments was *64 in turn, three checking accounts which were in Dr. Brown's name alone: a "personal account," an "office account," which held the proceeds of his medical practice, and a "grove account," in which the receipts from the Polk County grove were deposited.
After Dr. Brown died and Mrs. Brown then purportedly first discovered the gifts which had been made to Ms. Hanger,[1] she filed this action against her, seeking money damages and to impose a constructive trust against assets in Ms. Hanger's name. The basis of the claim was that Ms. Hanger had been "unjustly enriched" by the receipt of property which really belonged to Mrs. Brown, that is, entireties properties which had been owned by Dr. and Mrs. Brown, and to which Mrs. Brown was wholly entitled as the surviving spouse. By the time of trial, Mrs. Brown had narrowed the alleged sources involved to the proceeds of the sale of the Biscayne Boulevard property and the "profits" of the Polk County grove.
In the final judgment rendered after a non-jury trial, the trial judge specifically found that
"... the plaintiff has traced the assets from the sale of a home on Biscayne Boulevard owned as tenants by the entireties by the decedent and plaintiff to [the Florida National Bank and Trust Company] inter vivos trust ultimately modified in favor of the defendant Hanger ..."
Nonetheless the court denied the plaintiff all relief and Mrs. Brown appealed. She claims error (a) in the lower court's refusal to impose a constructive trust in her favor upon the inter vivos trust established with the proceeds of the Biscayne Boulevard property, and (b) in the denial of her claim for money damages against Ms. Hanger in the amount Dr. Brown paid to her benefit from the "grove account." We agree with the appellant's first contention, and disagree with the second.
Since it was demonstrated to the trial court's satisfaction that the source of the inter vivos trust was the Biscayne Boulevard entireties property, we hold, on the authority of Lerner v. Lerner, 113 So.2d 212 (Fla.2d DCA 1959), that Mrs. Brown must be deemed the equitable owner of that trust. The record demonstrated that Dr. Brown received the proceeds of the sale of the Biscayne Boulevard property and placed them into an individually held account. Under the law of Florida, he is deemed to have held those funds as trustee for himself and his wife, or, more precisely, as trustee for the estate by the entireties. See Merrill v. Adkins, 131 Fla. 478, 180 So. 41 (1938); Sheldon v. Waters, 168 F.2d 483 (5th Cir.1948). As the supreme court stated in Dodson v. National Title Ins. Co., 159 Fla. 371, 31 So.2d 402, 404 (1947):
"The income from, or the proceeds of, the sale of real estate held by the entirety is equally the property of the husband and the wife. It is held by the unity. Either one taking possession holds for the benefit of both. That is the rationale of our prior decisions." [emphasis supplied]
When these proceeds were given, in turn, to Ms. Hanger and found their way into the identified res represented by the Florida National inter vivos trust, they retained their trust character. 33 Fla.Jur., Trusts, § 73, p. 75, and cases cited. Florida National thus became the trustee, not for the named beneficiary, Ms. Hanger, who was not a purchaser for value, but rather for the entireties estate. E.g., Sewell v. Sewell Properties, Inc., 159 Fla. 570, 30 So.2d 361 (1947). Finally, when Dr. Brown died, Mrs. Brown became the owner of the entire estate, in this case, the beneficial interest in the inter vivos trust. E.g., Anderson v. Trueman, 100 Fla. 727, 130 So. 12 (1930).
In accordance with this line of analysis, the court, in Lerner v. Lerner, supra, upheld the claim of a widow which was in all material aspects identical to that asserted by Mrs. Brown against Ms. Hanger's interest in the trust. In that case, both Mr. and Mrs. Lerner joined in the conveyance of *65 real property they owned by the entireties. The consideration for the sale, 46 shares of stock, was issued to the husband alone; he at once assigned them, without the wife's knowledge, to his brother, Max Lerner. The court held, at 113 So.2d 216:
"... Appellee, Lydia E. Lerner, may trace the forty-six shares of stock (Lerner Groves, Inc.) into the hands of appellant, Max Lerner, who received same without paying any consideration therefor; and the estate by the entireties is preserved in said stock, as between the appellee and appellant ..."
This holding is determinative of Mrs. Brown's right to the Florida National trust estate.[2]
As to the separate claim made with respect to the funds allegedly derived from the grove property, we affirm the judgment below. The plaintiff admits that she is unable to trace any such monies to any particular assets now owned by Ms. Hanger. She seeks only a money judgment of over $100,000.00 against the defendant in the total amount of "grove funds" Dr. Brown gave to Ms. Hanger, on the ground that the defendant has to that extent been "unjustly enriched" at the plaintiff's expense. The appellant has cited no authority, and we have found none, which suggests that such a cause of action exists. Absent the ability to impress a constructive trust upon an identifiable res, cf. 33 Fla.Jur., Trust, § 73, pp. 75-76, we are unwilling to hold an innocent[3] transferee of trust property liable in compensatory damages to the rightful beneficiary.
In addition, the plaintiff did not establish that any funds from the grove were in fact monies to which she was entitled. While each tenant is entitled to a share of the "profits" of entireties property, see Lacker v. Zuern, 109 So.2d 180 (Fla.2d DCA 1959), the plaintiff in this case established only *66 gross amounts which had been received by Dr. Brown from the grove, without any deductions for the expenses required to operate and maintain it, or any showing as to what those expenses were. Since there was thus no demonstration that any "profits" whatever had been derived from the grove, see Innkeepers International, Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 106 (Fla. 1976), let alone the amount of those profits, Mrs. Brown's claim for this sum failed for lack of proof. See Moore v. Moore, 241 Ark. 675, 409 S.W.2d 830 (1966); Pattison v. Pattison, 207 Okla. 46, 247 P.2d 514 (1952); Annot., 51 A.L.R.2d 388 (1957).
The denial of the plaintiff's claim for the imposition of a constructive trust in her favor upon the Florida National Bank and Trust Company trust is reversed and the cause remanded for further proceedings consistent with this opinion; the judgment under review is otherwise affirmed.
Affirmed in part, reversed in part and remanded.
NOTES
[1] At Dr. Brown's death, Mrs. Brown became the representative of his estate and, of course, the sole owner of the grove property.
[2] We reject each of the arguments advanced by the defendant for affirmance on this issue. (a) Mrs. Brown obviously did not "consent" to a termination of the entireties estate. Compare MacGregor v. MacGregor, 323 So.2d 35 (Fla. 4th DCA 1975). Although, as in Lerner v. Lerner, she did know that the Biscayne Boulevard proceeds had been paid to Dr. Brown, individually, she had every right to assume, and no knowledge to the contrary, that he would properly exercise his duties as trustee for the entireties estate. (b) For much the same reason, the doctrine of laches does not apply. The period during which delay is computed for the purpose of applying the doctrine of laches begins to run, in a case such as this, only when the constructive beneficiary acquires or should acquire knowledge of the adverse claim of a constructive trustee. Wadlington v. Edwards, 92 So.2d 629 (Fla. 1957). Despite the fact that, as the trial judge held, Mrs. Brown may well have been on notice that her husband and Ms. Hanger were very good friends, indeed, she did not know that he had given her large gifts of money. Much less, until Dr. Brown's death, did she know or have reason to know of Ms. Hanger's "adverse claim" to the trust estate represented by the proceeds of the Biscayne Boulevard property. Moreover, Ms. Hanger gained nothing but benefit, in the form of interest payments from the inter vivos trust, from the delay assertedly involved here, rather than the detriment also required to sustain a laches defense. Florance v. Johnson, 366 So.2d 527 (Fla.3d DCA 1979). (c) The trial court also found that Ms. Hanger did not herself know that a source of Dr. Brown's largesse was property which both he and his wife owned. Since the defendant did not take the property as a bona fide purchaser for value, however, this fact is irrelevant to the plaintiff's right to recover against traceable trust property in her hands. Sewell v. Sewell Properties, Inc., supra.

Finally, although "neither party ha[d] called [it] to the court's attention," the final judgment relied heavily upon the case of Ball v. Ball, 335 So.2d 5 (Fla. 1976). The trial judge stated that the Ball decision left Dr. Brown free to dispose of the entireties property as he saw fit, since the source of all the couple's assets was his own efforts in his medical practice without any contributions by Mrs. Brown. We think the reliance on Ball was misplaced. (Indeed the appellee herself does not assert its applicability in this court.) Ball was concerned only with a claim by a spouse in a dissolution proceeding to the entire interest in property titled in the entireties. Moreover, by its terms, Ball applied only to "dissolution proceedings instituted" after it became final on June 30, 1976. 335 So.2d, at 8. While it is true that the complaint in this case, which was of course not a dissolution proceeding, was filed thereafter, Dr. Brown had died in 1975, thus fixing the parties' rights as of that date.
[3] The trial judge found that the plaintiff did not establish that Ms Hanger knew of the entireties character of the grove property or of the source of her funds. See n. 2, supra. That finding is supported by the evidence.