376 So.2d 886 (1979)
Lee R. MURRAY and Wife, Flora M. Murray, Appellants,
v.
John H. SULLIVAN and Wife, Priscilla Sullivan, Appellees.
No. MM-443.
District Court of Appeal of Florida, First District.
November 1, 1979.
*887 E. Leo Andrews, Jr., Fort Walton Beach, for appellants.
Michael Jones, of Selby, Chesser, Wingard, Barr & Jones, Chartered, Fort Walton Beach, for appellees.
MASON
This is an appeal from a final judgment of the Circuit Court of Okaloosa County which construed a writing as a contract for the sale and purchase of real estate and which ordered specific performance of the same.
The property in question was owned as a tenancy by the entireties by the Appellants, Murray.
The document construed by the trial court as a contract for sale and purchase reads as follows:
"Priscilla Sullivan.
I, Mrs. Priscilla Sullivan agree to rent said property beginning at the Northwest corner of Plot three (3) Gap Creek Sub-division; thence East 270 feet to point of beginning; thence running South 100 feet; thence East 90 feet; thence North 100 feet; thence West 90 feet to the point of beginning; with option to buy from L.R. Murray for the sum of four thousand dollars over a six year eight month period or eighty months at fifty dollars a month with the first payment due the first of November, 1972.
If the buyer, Mrs. Sullivan defaults on payment all monies paid will go to the seller L.R. Murray and this agreement is void and the buyer will pay thirty dollars per month rent while there.
Buyer agrees to pay all utilities and upkeep of said property and, at the end of the term, any monies to pass papers.
Lee R. Murray."
The body of the document was typed but the signatures of Mrs. Sullivan and Mr. Murray were signed with an ink pen. On the reverse side is a handwritten note which reads:
"Needs to be witnessed and notarized by the two people involved"
The instrument was never so notarized or witnessed by any witnesses. It was not signed by Ms. Murray nor Mr. Sullivan. It was not dated.
Appellees, Sullivan, went into possession of the described property in the fall of 1972 by moving their house trailer upon it and by removing therefrom a trailer belonging to the Murrays. They made payments to the Murrays of $50.00 per month for each of the months beginning with November 1st, 1972, and until October of 1976. On November 1st, 1976, the Sullivans tendered the sum of $100.00 by check to the Murrays for two months payments. The check was rejected by the Murrays through their attorney. On the face of this check signed by J.H. Sullivan and made payable to Lee R. Murray was written in the lower left hand corner the words "For Rent". Previously, under date of October 8, 1976, Lee R. Murray had written to J.H. Sullivan a notice to vacate the premises by October 15th, giving as the reason therefor the following:
"Because of the damages done to the chain link fence, storage shed, sewer system and the general neglect of up keep on the property." Evidently believing that under the Landlord and Tenant Act (Chapter 83 F.S.) sufficient notice to vacate had not been given to the Sullivans, the Murrays' attorney upon returning the $100.00 check included a second notice signed by the Murrays and dated November 16, 1976, directing the Sullivans to vacate the premises by December 3, 1976.
At the hearing before the court below Mr. Murray gave as his reason for wanting the Sullivans to vacate the property in question and for rejecting the $100.00 check was that the Sullivans "were not the type of people I'd like to live next door to me." Nowhere in the record is there any evidence that the Sullivans were in default of payments *888 at the time of these notices to vacate the premises, nor any claim by the Murrays that they were.
Some of the monthly payments of $50.00 were made by check with the words "For Rent" written thereon. Others did not so indicate. In three instances where the payments were made by cash receipts were given therefor by Mrs. Murray with the statement thereon that such were given "For Rent" received.
This proceeding was begun in the County Court of Okaloosa County by the filing therein of a petition by the Murrays for eviction of the Sullivans after notice, claiming that the latter were tenants at will and that they refused to deliver possession to the Murrays. To this petition the Sullivans answered by general denial of the right of the Murrays to evict them. They also filed an affirmative defense to the effect that they were in possession of the property under a contract to purchase, that they were not in default of the terms of such contract and therefore there existed no basis for their eviction.
Also to the petition for eviction the Sullivans filed a counterclaim asking specific performance of the contract for purchase of the property and conveyance by the Murrays to them of the property, subject matter of the suit.
Since the County Court lacked jurisdiction to determine the issues raised by the affirmative defense and counterclaim the County Court judge entered an order transferring the suit to Circuit Court.
The appellants have raised several points on appeal. One is that the trial court erred in ruling that the document set forth verbatim above is a contract for sale and purchase of real property instead of one for rent or lease. Both the trial court and counsel for the respective parties below seemed to be of the opinion that by its language the document was ambiguous and that therefore parol testimony was admissible to explain its meaning and the intent of the parties signing it. Such parol testimony admitted below was in direct conflict, with appellants contending that the parties intended a rental agreement while the appellees contended that the parties intended a contract for sale and purchase.
Although the instrument is crudely drawn, which is frequently so when parties in a desire to save money act as their own lawyer, we have no difficulty in resolving the question by resorting solely to the language itself, and without the use of parol testimony. An examination of the instrument indicates that it was an agreement for sale and purchase and not a rental agreement. This is true because of the following language in the instrument,
"If the buyer, Mrs. Sullivan defaults on payment all monies paid will go to the seller L.R. Murray and this agreement is void and the buyer will pay thirty dollars per month rent while there. (Underscoring ours).
This language indicates, without the resort to parol evidence, that although it is stated in the first paragraph of the instrument that "I, Mrs. Priscilla Sullivan agree to rent said property", the language in the second paragraph quoted above to the effect that upon a default by Mrs. Sullivan in the payment of the $50.00 monthly payments all monies previously paid on account of the agreement will be forfeited to L.R. Murray, designated in such paragraph as "seller", coupled with the statement immediately following that thereupon "this agreement is void and the buyer will pay thirty dollars per month rent while there", clearly indicates that the agreement was a contract to sell and purchase. This conclusion is fortified by the fact that the agreement in its first paragraph contains the following language immediately following the description of the property,
"with option to buy from L.R. Murray for the sum of four thousand dollars over a six year eight month period or eighty months at fifty dollars a month with the first payment due the first of November, 1972." (Underscoring ours).
When this last quoted language is read in pari materia with the language of the second paragraph of the instrument above *889 referred to it seems to us inescapable that the agreement must be construed as an agreement to sell and buy. Only upon a default in payments would the agreement become one for rent. And since there was no such default before the institution of this suit no such contingency arose. On this point the trial court did not err.
Points I and II present more vexing questions.
The property in question is an estate by the entireties and Point I on appeal raises the question as to whether Ms. Murray, who did not sign the instrument in question, by her action and conduct in the premises consented to the agreement to sell the property to the Sullivans. It is settled law in this state that since an estate by the entireties is vested in husband and wife as one person, neither spouse can sell, forfeit, or encumber any part of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition without such consent. 17 Fla.Jur., Husband and Wife, Section 27, page 87, and cases therein cited; Richart v. Roper, 156 Fla. 822, 25 So.2d 80 (1946).
In Richart, supra, the Supreme Court speaking through the late Mr. Justice Terrell held that the mere fact that the husband was the general manager of the property and looked after the rents and upkeep did not obviate the necessity of the wife's joinder in a lease of entireties property. To the same effect is Bailey v. Smith, 89 Fla. 303, 103 So. 833 (1925), where the Supreme Court held that neither spouse can alien or forfeit any part of an estate by the entireties without the assent of the other.
There is authority to the effect that the rule that an estate by the entireties can only be alienated by the joint deed of both spouses is subject to the exception that such alienation may take place if in the transaction one spouse, with full knowledge of the facts, constitutes the other spouse as his or her agent, and with such knowledge consents and acquiesces to and in the act of alienation by the agent spouse so constituted. Boyer on Florida Real Estate Transactions, Section 20.02(3); Anderson v. Carter, Fla.App., 100 So.2d 831 (2nd DCA, 1958). But this exception is applicable only if the separate transfer does not adversely affect the interest of the spouse for whom the other spouse is claimed to have acted as agent, and only if such separate transfer occurs with the assent of the spouse for whom the other spouse acted as such agent. MacGregor v. MacGregor, Fla.App., 323 So.2d 35 (4 DCA, 1975).
We hold that before such exception to the general rule is applicable to effectuate a transfer by only one spouse of an estate by the entireties that the evidence must be clear and convincing that such transfer does not (1) adversely affect the interest of the other spouse and (2) is done with the full knowledge, assent and acquiescence of such other spouse.
We must therefore look to the evidence before the trial court to determine if these requirements of the exception to the general rule were proven by such clear and convincing proof.
As to the first requirement it is clear that the attempted transfer by the husband alone, if effective, would adversely affect the wife's interest for such would terminate her interest in the estate. In the case of Madden v. Gosztonyi Savings and Trust Co., 331 Pa. 476, 200 A. 624, 630, cited by the court in the case of Anderson v. Carter, Fla.App., 100 So.2d 831 (2nd DCA, 1958) relied upon Boyer in his delineation of the exception to the general rule against alienation by one spouse only, the court there qualified the exception by holding that the exception to the general rule would not apply if its effect was to terminate the estate previously held as one by the entireties. Therefore, this is all the more reason why courts should be cautious in validating on the agency theory a conveyance of an estate by the entireties not joined in by both spouses.
We have examined the record closely to determine if the second requirement for the operation of the exception to the general rule existed so as to justify the trial court's holding that Mrs. Murray constituted *890 Mr. Murray as her agent with respect to the disposition of the subject property, and through her actions, consented and acquiesced to same. In so doing we recognize that the trial court is presumptively correct in his ruling, provided there is substantial competent evidence in the record to support it. But our examination and consideration of all the testimony and evidence before the court below leads us to the conclusion that Mr. Murray by signing the document in question was not acting with authority from his wife to sell the property in question. Nor is the evidence clear and convincing to the effect that Mrs. Murray assented to or acquiesced in such sale. At most the evidence below supports only the conclusion that Mrs. Murray agreed to and acquiesced in the transaction as being only one for the month by month rental of such property. This conclusion is supported by the fact that Mrs. Murray specifically denied that she consented to or acquiesced in the sale of the property, by the fact that most of the monthly payment checks or receipts given to or by her were marked "For rent", by the fact that Mr. Murray testified that he did not apprise his wife of the fact of the existence of the agreement which was signed only by him and Ms. Sullivan, and by the fact that the record is completely void of any evidence to the effect that Mrs. Murray ever saw or knew about the document signed by her husband only and which purported to convey away her interest in the property.
In conclusion we are impelled to observe that all of the uncertainty and confusion with which this record abounds could have easily been avoided by the appellees had they secured proper legal advice in the premises instead of relying upon the advice and craftmanship of Ms. Sullivan's layman brother.
Having concluded that the transfer in question was not concurred in by the appellant, Mrs. Murray, it is not necessary that we consider the effect of the Statute of Frauds upon the transaction as presented in Point II of this appeal.
Reversed and remanded for further proceedings below in accordance with the views herein expressed.
McCORD, Acting C.J., and SHIVERS, J., concur.