# Third District Court of Appeal
## State of Florida

Opinion filed May 11, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-244
Lower Tribunal No. 16-2767
_____

**Mark Wallace,**
Appellant/Cross-Appellee,

vs.

**Yanelin Torres-Rodriguez,**
Appellee/Cross-Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Stack Fernandez & Harris, P.A., and Brian J. Stack, for appellant/cross-appellee.

Rasco Klock Perez & Nieto, P.L., and Juan Carlos Antorcha, for appellee/cross-appellant.


Before FERNANDEZ, C.J., and EMAS, and BOKOR, JJ.

FERNANDEZ, C.J.

Appellant/third-party plaintiff/cross-appellee Mark Wallace ("Mark")[1] appeals the trial court's Final Judgment entered in accordance with the trial court's October 29, 2020 Findings of Facts and Conclusions of Law and the trial court's December 8, 2020 Supplemental Findings of Fact and Conclusions of Law. In addition, appellee/third-party defendant/cross-appellant Yanelin Torres Rodriguez ("Yanelin") cross-appeals the Final Judgment. With regard to Mark's direct appeal, we reverse the trial court's Final Judgment in part because the trial court erred in allowing Yanelin to keep three out of the seven tenancy by the entirety properties in question as an equitable setoff. Concerning the issues on Yanelin's cross-appeal, we affirm the trial court's Final Judgment. Yanelin's contention that the trial court erred in imposing a constructive trust on the tenancy by the entirety assets not awarded to her by the court fails for the same reason that Mark's contention on direct appeal prevails: under the facts of this case, a constructive trust is the proper remedy to recover tenancy by the entireties assets wrongfully transferred by Milton Wallace ("Milton") during his marriage to his wife, Patricia Wallace ("Patricia"), without Patricia's consent.

---

[1] As some of the principal parties have the same last name, we refer to them by their first name to avoid confusion.

## FACTS AND PROCEDURAL HISTORY

In 2010, Milton was diagnosed with a degenerative neurological condition that diminishes memory and mental capacity. His wife, Patricia, advised their estate planning attorney that Milton and Patricia wanted to make estate planning arrangements to protect their marital assets, worth millions of dollars, considering their age and Milton's degenerative disease. Patricia was worried that Milton would deteriorate and that his judgment and capacity to handle their financial affairs would be affected. Patricia also told their estate planning attorney that she was worried that Milton might be unduly influenced by third persons to convey their marital assets. Considering this, the parties had their attorney draft, and they signed, the "Milton and Patricia Wallace Irrevocable Trust Agreement" ("Irrevocable Trust") on February 7, 2011. Section 2 of the Irrevocable Trust states:

> We intend to enter into a marital agreement after the execution of this trust agreement. Our marital agreement will provide that upon the death of the first one of us to die, all assets of any nature (including our residence) owned by us as tenants by the entirety or as joint tenants with right of survivorship, wherever located, will be conveyed by the survivor of us to the trustee of the trust created by this trust agreement. We are executing this agreement to set forth the terms of the trust upon which those jointly owned assets will be held when conveyed by the survivor of us to the Trustee.

Mark, Milton and Patricia's eldest son, is the current trustee of his parents' Irrevocable Trust.

3

Afterwards, on June 2, 2011, their attorney drafted, and they signed, the "Marital Agreement to Fund Joint Trust" ("Marital Agreement"). Section 2 of the Marital Agreement stated that the surviving spouse was required to convey all the Wallaces's joint marital assets into the Irrevocable Trust within sixty days of the spouse's death. Section 3 of the Marital Agreement prohibited either spouse from transferring joint marital assets while they were alive without the "direct and personal joinder" of the other spouse. Except for Milton's Individual Retirement Account, all the parties' marital assets were owned as tenants by the entireties. In addition, Section 1 of the Marital Agreement stated:

> to allow the successor trustees and beneficiaries under the Trust Agreement to be able to bring whatever legal proceedings may be necessary to require the survivor of us to convey all of our jointly owned assets to the then serving trustee or trustees under the Trust Agreement, and to rescind any transfers of assets that might be made by the survivor of us contrary to the requirements of this Marital Agreement.

Furthermore, section 5 of the Marital Agreement authorized Mark, his brother Hardy Wallace, and his sister Rebecca Spinale, among others, to take "all actions to rescind transfers in violation of the provisions of the Marital Agreement" and to pursue all "actions for damages, attorney's fees, and costs."

4

On May 3, 2016, Patricia died. Mark is the sole personal representative of his mother's probate estate.[2] A few days after Patricia's death, Milton told Mark that while he was married to Patricia, Milton had a girlfriend, Yanelin, for approximately fourteen years before Patricia's death. Milton told Mark that Milton paid Yanelin for sex. Milton also admitted to Mark that Milton transferred $1 million in cash from Milton and Patricia's joint marital assets to Yanelin on July 15, 2012 and transferred $1 million in cash to Yanelin from joint marital assets on January 15, 2015. The cash transfers were documented in two United States Gift Tax Returns prepared by Milton's accountant and filed by Milton with the Internal Revenue Service. Milton admitted he gave Yanelin the $2 million in cash referenced in the U.S. Gift Tax Returns. Yanelin admitted receiving the money. Prior to his mother's death, Mark had no knowledge that his father had given away his parents' joint marital assets to Yanelin.

Approximately three months after Patricia's death, Mark sued Yanelin to recover the $2 million in joint marital assets that Milton transferred to Yanelin. In addition, Mark alleged that Milton gave away to Yanelin approximately $5 million dollars of marital property owned by Milton and

---

[2] Mark is also co-guardian of Milton, who was placed under plenary guardianship by the probate court on January 21, 2021 due to his deteriorating neurological condition.

5

Patricia without Patricia's consent and in contravention of Milton and Patricia's Marital Agreement and Irrevocable Trust that the parties had executed in 2011. Mark claimed the transfers to Yanelin violated Patricia's ownership rights as a tenant by the entireties of the assets. Mark amended his complaint in March 2017 and asserted four counts: Count I for constructive fraud; Count II for avoidance of fraudulent transfers to Yanelin under section 726, Florida Statute (2016); Count III for aiding and abetting breach of fiduciary duty and aiding and abetting fraudulent transfers; and Count IV for imposition of a constructive trust. All the claims against Yanelin were brought by Mark on behalf of the Irrevocable Trust.

Thereafter, Yanelin was deposed on August 10, 2016. When asked about the two $1 million cash transfers made by Milton to her, she invoked her Fifth Amendment privilege against self-incrimination. Yanelin did not answer any questions about her relationship with Milton, or questions about any transfers to her from Milton of the Wallace's joint marital assets. Later, on September 19, 2019, Yanelin was deposed again. This time, she testified that she received more cash, stocks, and real property from Milton before Patricia died, all of which were tenancy by the entireties marital assets.

A bench trial before the court was held on September 15 and 16, 2020. Milton and Yanelin's testimony and the evidence submitted at trial

demonstrated that Milton used tenancy by the entireties assets to purchase three condominiums in Yanelin's name and stocks worth millions which were placed in Fidelity and Merrill Lynch brokerage accounts in Yanelin's name. Tenancy by the entirety assets used by Milton to either give to Yanelin or purchase property or stocks for Yanelin included the following:

1. **A $105,000 Condominium** – Yanelin admitted at trial that Milton bought her a condominium in 2010 for $105,000 (Unit 801, located at 1690 S.W. 27th Avenue in Miami). The condominium is unencumbered by a mortgage.

2. **$2.0 million in Cash** - Milton testified that he gave Yanelin $1 million in cash in 2012 and another $1 million in cash in 2015. The cash gifts were documented on Milton's U.S. Gift Tax returns filed with the Internal Revenue Service. Although she denied at trial receiving $2 million in cash, Yanelin signed an affidavit attached to her summary judgment motion filed in 2017 attesting that "Milton Wallace gifted me with $1 million in 2012 and another million dollars in 2015." She further admitted that she reviewed the U.S. Gift Tax Returns.

3. **Stocks Worth $1.2 million on Deposit at Fidelity** – Yanelin testified that in 2013 Milton wrote checks in excess of $1.2 million to purchase shares of stock in 21 different public companies to be held in Yanelin's name. Initially, the stocks were held by Yanelin in certificate form. Later, Yanelin deposited the stock certificates into a Fidelity Investments securities account, account no. xxxx-480165 opened by her in Coral Gables, Florida. After the Fidelity account was opened, Milton purchased additional shares of stock which were deposited into the Fidelity account. By August 2013, the Fidelity account held $1.25 million in corporate stock and cash, all acquired using the Wallaces's marital assets. At the time of trial, the Fidelity account held $1.174 million in corporate stock and in cash. Yanelin testified that "I said before that all of the stocks were purchased using [Milton's] money."

7

4. **2,000 Shares of Exxon Mobil Stock** – Yanelin admitted at trial that Milton purchased for her 2,000 shares of Exxon Mobil stock, which she held in certificate form, which she keeps at her home.

5. **A $220,000 Condominium** – Yanelin testified at trial that in December 2013, Milton gave her a cashier's check for $120,000, which was deposited into Yanelin's Bank of America checking account. She admitted she used the $120,000, together with an additional $100,000 provided by Milton that was in the Fidelity account, to purchase a second condominium for $220,000 (Unit 308, located at 1690 S.W. 27th Avenue in Miami.). The condominium is unencumbered by a mortgage.

6. **Merrill Lynch Securities Account** – In September 2014, Yanelin opened a second investment securities account at Merrill Lynch in Coral Gables, Florida and transferred over some of the stocks from her Fidelity Investments account.

7. **$975,000 in Cash and a $510,000 Condominium** - In September 2015, Yanelin testified that Milton gave her a cashier's check in the amount of $975,000. Yanelin used a portion of the $975,000 cashier's check to purchase a third condominium (Unit 14A, located at 1607 Ponce de Leon Boulevard in Coral Gables; purchase price $510,000). The condominium is unencumbered by a mortgage. Yanelin testified that the balance of the $975,000 was used by her to purchase additional corporate securities that were deposited into the Merrill Lynch account. At the time of trial, the Merrill Lynch account held $896,745 in corporate stock and cash.

8. **$14,000 in Cash** – Yanelin testified that Milton gave her a check for $14,000 in 2016 to commemorate the birth of her daughter. Milton was not the father of the child. The check was deposited into Yanelin's Chase bank account, where it remained as of trial.

In addition, Yanelin admitted in her deposition testimony which was introduced at trial that she did not pay anything to Milton or give him any consideration for the transfer of these marital assets to Yanelin. She testified

the transfers were all gifts to her. Mark testified at trial that Milton never told Patricia about the affair with Yanelin and about the transfers of marital assets that Milton made to Yanelin. The trial court permitted Milton's testimony from a March 29, 2017 deposition to be introduced at trial, over Mark's hearsay objections, where Milton testified that Patricia orally consented to the two $1 million gifts he made to Yanelin, but Patricia never signed U.S. Gift Tax Returns. However, Milton conceded that Patricia "did not directly and personally" join with him in making any transfers of the marital assets to Yanelin, as was required under the Marital Agreement. Milton testified he gave Yanelin money because she was poor.

After the bench trial concluded, the trial court entered its first order, "Findings of Fact and Conclusions of Law," dated October 29, 2020. In this order, the trial court found that all the assets accessed by Milton to make transfers to Yanelin came from the Wallaces's joint marital assets that were owned by Milton and Patricia as tenants by the entireties. The trial court stated, "[I]t is conceded that virtually all of Milton and Patricia's very considerable estate (except his Individual Retirement Account, . . .) was held in tenancy by the entireties." The trial court further acknowledged that Milton and Patricia's Marital Agreement also indicated that they held most almost all of their marital property as tenants by the entirety. The trial court noted

9

that in addition to the prohibition against transfer contained in the Marital Agreement, under Florida law, Milton did not have the right to transfer tenancy by the entirety assets to Yanelin without Patricia's knowledge and consent. The trial court also found that Milton conceded at trial that Patricia did not directly and personally join with him in making any transfers of joint marital assets to Yanelin.

Moreover, the trial court did not accept Yanelin's position that Patricia was aware that Milton was having an extramarital affair with her and that Patricia consented to Milton's transfer of millions of dollars of their marital assets to Yanelin. The trial court found this explanation "dubious on its face" and "inherently suspect." Although the trial court permitted Milton to testify at trial—over Mark's hearsay objections—that he transferred marital assets with his wife's "consent," the trial court found "that his assertions were also self-serving and inherently hard to believe." The trial court found that under Lowry v. Florida National Bank of Jacksonville, 42 So. 2d 368 (Fla. 1949); Murray v. Sullivan, 376 So. 2d 886 (Fla. 1st DCA 1979); and Sharps v. Sharps, 214 So. 2d 492 (Fla. 3d DCA 1968), where a married couple owns property in the form of tenancy by the entireties and where one spouse alienated a substantial share of that property, a prima facie case of unjust

10

enrichment against the recipient of the property is made out. The court wrote

in its order:

> The burden is on the recipient of the property to establish the consent of the other spouse. . . . [T]he case at bar does not involve a "grande" from Starbucks. It involves millions of dollars given by a married man to his mistress. Here consent is not reasonably implied but must be proved. Because Yanelin cannot carry the burden to prove that those millions of dollars were given with Patricia's consent, Yanelin was unjustly enriched and equity will impose a remedy in the form of a constructive trust.
> \* \* \*
> To recap: Over the course of a decade and a half, Milton Wallace gave millions of dollars in money and property to Ms. Torres-Rodriguez, with whom he was carrying on a romantic liaison. The money and property was held in tenancy by the entireties by Milton and his late wife Patricia. Without Patricia's consent to these gifts, which consent I found that Ms. Torres-Rodriguez had not established by clear and convincing evidence, Milton had no legal right to give them and Ms. Torres-Rodriguez no legal right to receive and retain them.
> \* \* \*
> Milton Wallace's transfer of funds and assets to Yanelin Torres-Rodriguez was wrongful, and he knew it. Yanelin Torres-Rodriguez's receipt and retention of those funds and assets was wrongful, whether or not she knew it. Ms. Torres-Rodriguez has been unjustly enriched.

Accordingly, the court found that under count IV, Mark had made a showing

for imposition of a constructive trust because Yanelin was unjustly enriched

11

by Milton's transfers. The court denied relief under counts I, II and III of Mark's third-party complaint.[3]

Although the parties had rested their case, the trial court ordered a supplemental evidentiary hearing to determine whether any of the assets purchased by Milton could be retained by Yanelin because of a "change of position" or by virtue of the passage of time as contemplated by Section 65 of the *Restatement (Third) of Restitution and Unjust Enrichment.* The trial court directed the parties to present "evidence and argument" as to the following issues: 1) Which, if any, assets presently in Yanelin's hands were given to her by Milton or can be traced directly to gifts from Milton; 2) whether Yanelin could prove change of position as a consequence of Milton's gifts, such that a constructive trust as to a particular gift or gifts would be inequitable; and 3) whether the passage of a substantial period of time since the receipt of any gift would render the imposition of a constructive trust inequitable as to that gift. Also in its order, the trial court enjoined Yanelin from transferring any of the real estate or stocks attributable to the gifts and transfers of tenancy by the entireties property made to her by Milton.

---

[3] Mark is not appealing the trial court's ruling regarding count I for constructive fraud, nor count III for aiding and abetting breach of fiduciary duty/aiding and abetting fraudulent transfers.

The court then conducted a supplemental hearing on November 19, 2020 to answer the three questions it posed in its October 29, 2020 order. Regarding the tracing of the marital assets into Yanelin's possession, Mark filed a chart titled "Transfers of Wallace Joint Marital Assets Traced in Rodriguez's Possession," with citations to the trial transcript. As accurately demonstrated in the chart, all the joint marital assets discussed at trial that were in Yanelin's possession were directly traced to Milton Wallace.

After the hearing, in its December 8, 2020 order, the trial court found that Yanelin's position had changed by her inaction. The court stated:

> [Milton] made clear to [Yanelin] that he wished to provide for her, to make her financially secure and even comfortable. In exchange, she provided him her time, her companionship, and her intimate affection. She did not go to college and study for a career. She did not get a job and build up pension benefits and social security credits. She became Milton Wallace's paramour.

The court then concluded:

> [Yanelin's] position is changed, very much changed, from what it was. In reliance on Milton Wallace's support, and his assurance of continued support, she refrained from finding whatever employment she would otherwise have been obliged to find. Her employment opportunities may have been meager; but whatever they were, they are likely unavailable to her in her present circumstances. Her position has changed.

Accordingly, the trial court found that Yanelin's change of position resulted from the inaction she took in never developing earned income. The trial court

13

thus allowed Yanelin to keep three out of the seven contested marital assets.

The court divided the marital assets as follows:

-2000 shares of Exxon Mobile stock – Mark

-$14,000 give to Yanelin to mark the birth of her son in 2016 – Mark

-Condominium at 1607 Ponce de Leon, Apt. 14A (purchased with $975,000 cashier's check) that has been Yanelin's principal place of residence for last five years – Yanelin

-Condominium at 1690 S.W. 27th Avenue, Apt. 801 held as investment property – Yanelin

-Fidelity Investments Acct. No. xxx-480165 corporate stock – Yanelin

-Condominium at 1690 S.W. 27th Avenue, Apt. 308 held as investment property – Mark

-Merrill Lynch Acct No. 47A96 stock brokerage account – Mark

Yanelin has not disgorged these assets yet. Thereafter, the trial court entered its Final Judgment on December 8, 2021, in accordance with 1) the October 29, 2020 Findings of Facts and Conclusions of Law, as well as 2) the December 8, 2020 Supplemental Findings of Fact and Conclusions of Law. Mark then appealed on behalf of the Irrevocable Trust, and Yanelin cross-appealed the trial court's Final Judgment.

## DISCUSSION

## Direct Appeal

On appeal, Mark contends that 1) the trial court erred in allowing Yanelin to keep more than $1.7 million of the fraudulently transferred marital assets, and 2) Mark proved the fraudulent transfer claim as a matter of law. Yanelin answers that 1) the trial court did not err in allowing her to keep more than $1.7 million of the assets but erred in not allowing her to keep all the assets, and 2) there was no evidence of fraudulent transfer. We agree with Mark on his first point on appeal but disagree with him on his second point. The trial court correctly imposed a constructive trust against all the assets in Yanelin's possession that were purchased with the Wallaces's tenancy by the entireties property and transferred to Yanelin. However, under the circumstances, the trial court erred in applying the equitable principle of detrimental reliance or change of position when it permitted Yanelin to retain three of the seven marital assets because it found that Yanelin had been induced by Milton into not working or not getting an education.[4]

We do not disturb factual findings of the trial court supported by competent substantial evidence. As this court explained, "[w]hen a cause is

---

[4] We do not address the second issue on appeal brought by Mark (whether Mark proved the fraudulent transfer claim), as the constructive trust issue is dispositive on this appeal.

15

tried without a jury, the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." Universal Bevs. Holdings, Inc. v. Merkin, 902 So. 2d 288, 290 (Fla. 3d DCA 2005); see also Duncanson v. Serv. First, Inc., 157 So. 2d 696, 699 (Fla. 3d DCA 1963) ("We are duty bound not to disturb the findings of fact of a trial judge in a case heard without a jury where such findings are based upon conflicting competent evidence."). However, the trial court's application of law is subject to *de novo* review. S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So. 2d 317, 318-19 (Fla. 2005) (explaining that questions of law are subject to de novo review).

"It is well settled in Florida that an estate by the entireties is vested in the husband and wife as one person, and neither spouse can sell, forfeit, or encumber any part of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition without such consent." Douglass v. Jones, 422 So. 2d 352, 354-55 (Fla. 5th DCA 1982). Thus, in its order, the trial court correctly relied on Sitomer v. Orlan, 660 So. 2d 1111, 1113 (Fla. 4th DCA 1995), which held that "neither spouse may sever or forfeit any part of the [marital] estate without the assent of the other, so as to defeat the right of the survivor." Id. at 1113. The Fourth District Court

16

of Appeal in <u>Sitomer</u> held that "the nonseverability doctrine preserves the entireties status of funds even after one spouse renames an account or transfers money from it without the consent of the other." <u>Id.</u> at 1114. The correct remedy here was exactly as the trial court did, which was to impose a constructive trust because it is imposed as "an equitable remedy in a situation where there is a wrongful taking of the property of another." <u>Abele v. Sawyer</u>, 750 So. 2d 70, 74 (Fla. 4th DCA 1999). In addition, the trial court may impose a constructive trust against a recipient of funds who has not engaged in any type of wrongful conduct. <u>Browning v. Browning</u>, 784 So. 2d 1145, 1148 (Fla. 2d DCA 2001).

At trial, Yanelin's position was that Patricia consented to Milton's transfer of tenancy by the entireties assets. However, the trial court did not accept her argument and did not believe the evidence presented on the issue of Patricia's consent, finding "the whole story inherently suspect." In Florida, when a spouse or the legal representative of a spouse challenges a transfer of tenancy by the entireties property by the other spouse, the transferee has the burden of proving that the transfer does not adversely affect the interest of the other spouse and that the transfer was done with "the full knowledge, assent and acquiescence of such other spouse." Both spouses consented to the transfer and that neither spouse was adversely affected by the transfer.

17

Murray, 376 So. 2d at 889. Moreover, the transferee has the burden of proving these two factors by clear and convincing evidence. Id. The court found that Yanelin did not carry her burden of proof in establishing that Patricia consented to the transfers.

The trial court held that Milton had no legal right to make the transfers of joint marital assets when he did, that Yanelin had no legal right to receive them and keep them, and that they both knew what they each were doing was wrong, under Florida law and under the Marital Agreement/Irrevocable Trust. The trial court correctly relied, in part, on this court's opinion in Brown v. Hanger, 368 So. 2d 63, 64 (Fla. 3d DCA 1979), where this court affirmed the trial court's imposition of a constructive trust in favor of the wife where the husband sold tenancy by the entireties assets and used the cash gifts/payments to his secretary/friend during the marriage, without the wife's consent. However, after making the initial determination in the first order that the properties were all tenancy by the entirety properties and thus Milton had no right to transfer them or Yanelin to keep them, the trial court concluded in its December 8, 2020 Supplemental Order that Yanelin's position was changed by her inaction when she "refrained from finding whatever employment she would otherwise have been obliged to find." Mark is correct that the trial court incorrectly applied the equitable principle articulated in

18

Section 65 of the *Restatement (Third) of Restitution and Unjust Enrichment,* when it allowed Yanelin to keep three out of the seven subject assets that she was not entitled to under the law.

First, as a prudential matter, change of position is an affirmative defense that must be raised. <u>See</u> Section 65, *Restatement (Third) of Restitution and Unjust Enrichment,* comment "a". Yanelin did not plead a change of position defense, thus, she waived it. <u>Goldberger v. Regency Highland Condo. Ass'n</u>, Inc., 452 So. 2d 583, 585 (Fla. 4th DCA 1984). Similarly, Mark is correct that the trial court erred in allowing Yanelin to be recalled as a witness to testify about her detrimental reliance or change of position, a defense she did not plead. <u>Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp.</u>, 537 So. 2d 561, 563 (Fla. 1988).

Next, even if we were to consider the equitable defenses on their merits, they would not lead to the result reached by the trial court. Section 65, "Change of Position," states: "If receipt of a benefit has led a recipient **without notice** to change position in such manner that an obligation to make restitution of the original benefit would be inequitable to the recipient, the recipient's liability in restitution is to that extent reduced." (Emphasis added). Here, Yanelin was not "without notice." Yanelin knew she was receiving

marital property, as the record reflects that she kept inquiring whether Milton had filed the U.S. Gift Tax Return documents with the IRS, but she never determined if Patricia had consented to the transfer of Patricia's assets. Comment "f" to Section 65 of the *Restatement (Third) of Restitution and Unjust Enrichment*, "Notice," states: "Section 65 incorporates the familiar rule that the defense of change of position is not available to one who acts with notice of the facts underlying the eventual restitution claim. . . ." Thus, Yanelin cannot now claim that by not pursuing a job or going to school, she changed her position because she was on notice that she was receiving marital property that belonged to Patricia.

Accordingly, the trial court erred when it allowed Yanelin to keep the $105,000 condominium located at 1690 SW 27th Avenue, Unit 801, in Miami; all of the stock and cash in the Fidelity Investments account, and the $510,000 condominium located at 1607 Ponce de Leon Boulevard, Unit 14A, in Coral Gables.

## CROSS-APPEAL

In her cross-appeal, Yanelin contends that imposing a constructive trust was error because Mark did not prove by clear and convincing evidence each element for imposition of a constructive trust. This Court reviews a trial

20

court's ruling on unjust enrichment under the competent, substantial evidence standard of review. Cole Taylor Bank v. Shannon, 772 So. 2d 546, 552 (Fla. 1st DCA 2000); Flatirons Bank v. Alan W. Steinberg Ltd. P'ship, 233 So. 3d 1207, 1212 (Fla. 3d DCA 2017). As previously explained, a constructive trust was the appropriate remedy for a claim of unjust enrichment, Saporta v. Saporta, 766 So.2d 379, 381-82 (Fla. 3d DCA 2000), and clear and convincing evidence supported the trial court's imposition of such. Abreu v. Amaro, 534 So. 2d 771, 772 (Fla 3d DCA 1988) ("The person seeking to impose a constructive trust must prove those factors giving rise to a trust by clear and convincing evidence."). "A constructive trust may be imposed against a recipient of funds who has not engaged in the wrongful conduct that justifies the imposition of the trust." Joseph v. Chanin, 940 So. 2d 483, 487 (Fla. 4th DCA 2006) (citing Browning, 784 So. 2d at 1148).

## CONCLUSION

Under the facts of this case, a constructive trust is the proper remedy to recover tenancy by the entireties assets wrongfully transferred by Milton to Yanelin during his marriage to Patricia, without Patricia's consent. Accordingly, on Mark's direct appeal, we reverse that portion of the Final Judgment that finds support in the trial court's December 8, 2020

21

Supplemental Findings of Fact and Conclusion of Law order allowing Yanelin to keep (1) the $105,000 condominium located at 1690 SW 27th Avenue, Unit 801, in Miami-Dade County; (2) all of the stock and cash in the Fidelity Investments account, and (3) the $510,000 condominium located at 1607 Ponce de Leon Boulevard, Unit 14A, in Coral Gables. These three marital assets, along with the other four assets awarded to Mark by the trial court in the October 29, 2020 Findings of Fact and Conclusions of Law order, are to be disgorged by Yanelin to Mark so that they can be placed into the Irrevocable Trust. Regarding Yanelin's cross-appeal, the remainder of the Final Judgment that finds support in the trial court's October 29, 2020 order imposing a constructive trust against the other assets conveyed to Yanelin is affirmed. Accordingly, we affirm in part and reverse in part the December 16, 2021 Final Judgment. We remand for the trial court to amend the Final Judgment consistent with this opinion.

Affirmed in part; reversed in part and remanded.