404 So.2d 1098 (1981)
Felice GINSBERG, Appellant,
v.
Charlotte GOLDSTEIN, F/K/a Charlotte Ginsberg and Burton Ginsberg, Appellees.
No. 80-2322.
District Court of Appeal of Florida, Third District.
October 6, 1981.
Rehearing Denied November 4, 1981.
Linet, Rovenger & Perkins, North Miami Beach, Joseph P. Averill, Miami, for appellant.
Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff and Kendall B. Coffey, Miami, for appellees.
Before BARKDULL, SCHWARTZ and FERGUSON, JJ.
SCHWARTZ, Judge.
This is the latest chapter in the continuing saga, which by now more than passingly resembles Jarndyce and Jarndyce, of Charlotte *1099 Ginsberg Goldstein's attempts to collect upon a judgment for past-due alimony which was rendered over two decades ago, on July 26, 1961.[1] In 1979, the ex-Mrs. Ginsberg located and garnished a $2,005.38 checking account in the name of Burton Ginsberg in the Second National Bank of North Miami Beach. Burton asserted in defense that $1,500 of that amount[2] belonged not to him, but to his present wife, Felice, and Felice duly filed a claim to that effect in the garnishment proceeding pursuant to Section 77.16(1), Florida Statutes (1979). The basis of their joint contention was that the $1,500 sum was the proceeds of an Allstate Insurance Company draft in payment on an insurance claim for a valuable statue which had been given to and was owned by Felice when it was stolen from her and Burton's home. Supported by unrebutted affidavits to this effect by Felice; Burton; the donor of the statue, Burton's brother, Daniel Ginsberg; and the insurance adjustor who had secured the issuance of the draft, Felice moved for summary judgment awarding the $1,500 to her. On the basis of the likewise undisputed facts that the judgment debtor, Burton, was the only named insured of the policy in question, the sole payee of the insurance check, and the sole and unqualified holder of the account into which the draft was deposited, Charlotte also sought an order directing the bank to pay her the entire contents of the account. The trial judge ruled that while he thought the "equities" were with Felice, the law was with Charlotte, and entered judgment in her favor. He expressed the hope that this court would reverse his decision. We indulge that desire on the basis of our conclusions that the legal right to garnished property turns upon its equitable ownership and that Felice in fact owns the $1,500 now in dispute.
In accordance with the basic principle of garnishment that a plaintiff merely stands in the shoes of the judgment debtor, see Howe v. Hyer, 36 Fla. 12, 17 So. 925 (1895); Barsco, Inc. v. H.W.W., Inc., 346 So.2d 134 (Fla. 1st DCA 1977), it is universally held that property which is not actually and in "good conscience" deemed to be owned by the debtor may not be secured by the judgment creditor. 38 C.J.S. Garnishment § 71 (1943); 6 Am.Jur.2d Attachment and Garnishment § 92 (1963). This rule is directly applicable to the bank deposit situation before us. Even though, as here, the debtor holds a general account in his own name, thus creating a simple creditor-debtor relationship between him and the bank, Camp v. First National Bank of Ocala, 44 Fla. 497, 33 So. 241 (1902), and a concomitant obligation by the bank to pay out the funds at his direction, Aronson v. First Savings & Trust Co. of Tampa, 139 Fla. 240, 190 So. 524 (1939), the depositor's creditor is not entitled to the money if it is actually owned by somebody else. Instead, the somebody else is. E.g., Susman v. Exchange National Bank of Colorado Springs, 117 Colo. 12, 183 P.2d 571, 573-74 (1947). As is accurately stated, based on the cases collected, at 38 C.J.S. Garnishment § 80 (1943):
Funds of defendant on deposit in a bank are subject to garnishment in the absence of special circumstances creating an exemption. However, the garnishing creditor can reach funds of the depositor only in cases where the depositor is the true owner thereof.
For the purposes of garnishment a bank deposit prima facie belongs to the person in whose name it stands, the general test being whether, but for the garnishment, the deposit would be subject to defendant's check, or whether defendant could sue the bank therefor in debt or assumpsit. These considerations, however, are not conclusive, and the fact that the depositor can withdraw or maintain *1100 an action for the deposit does not in all cases render the deposit subject to garnishment at the instance of a creditor of the depositor.

* * * * * *

Deposit in defendant's name of money of another. Money of another deposited by a debtor in his own name cannot be reached by garnishment as the property of such debtor.[[3]] This rule is based on the doctrine that in garnishment the equitable title to the property sought to be reached will prevail over the bare legal title, and is especially applicable to deposits of trust funds, and deposits by agents and public officers. However, it has been held that a deposit which amounts to a conversion by the depositor may be reached as his property. [e.s.]
Accord, 6 Am.Jur.2d Attachment and Garnishment § 162 (1963), and cases cited. In at least one instance, Gladden v. Columbiana Savings Bank, 29 Ala.App. 97, 193 So. 185 (1939), cert. denied, 238 Ala. 648, 193 So. 187 (1939), this doctrine has been applied to recognize a claim, like Felice's, of the wife of the debtor to a general account standing in his name. At 193 So. 185, 186, the court held
It is true that when Mack D. Messer, appellant's `judgment debtor' in this case, deposited the money in appellee's bank to his individual credit  the deposit standing in the name of `Mack D. Messer, Agent' (Gladden v. Columbiana Sav. Bank, 235 Ala. 541, 543, 180 So. 548)  that fact, without more, showed prima facie, that it belonged to him, but not conclusively so. If it really belonged to his wife, the fact that her husband, to whom she entrusted it, deposited it in (the) bank to his own credit, did not change her title to it. Bessemer Savings Bank v. Anderson, 134 Ala. 343, 32 So. 716, 92 Am.St.Rep. 38.[[4]]
The ultimate question, then, is whether Burton or Felice "really" owned the $1,500 in question. Since it indisputably represented and was paid for property which belonged to her, we hold that she did. As the head of the household which contained the statue, Burton had an insurable interest in the property which permitted him to secure insurance coverage upon it even though it was owned by his wife. Jones v. American Eagle Ins. Co., 91 Fla. 565, 108 So. 165 (1926).[5] This fact could not, however, give Burton any greater interest in the insurance proceeds which in effect represented the statue, than he had had in the statue itself. Both Doss v. Roberts, 487 S.W.2d 839 (Tex.Civ.App. 1972), and Rolater v. Rolater, 198 S.W. 391 (Tex. Civ.App. 1917), squarely, and we think correctly, hold that a husband's receipt of insurance proceeds for property in which his *1101 wife held an interest renders him a trustee of those funds which represent that interest. See, generally, 5A J.A. & J. Appleman, Insurance Law and Practice, §§ 3361, 3363 (rev.ed. 1970). As the cases point out, to hold otherwise would be unacceptably to permit the outright and involuntary purchase of the wife's property by the husband for the minimal cost of an insurance premium.[6] Since it is undisputed that Felice had the entire ownership interest in the statue, it follows that she retained the entire beneficial interest in the insurance payment as well.
Nor does it matter that the proceeds had already changed hands in the form of a draft payable to and endorsed by Burton and deposited in his account at the bank. Since the $1,500 is concededly traceable from the statue to that account, it retained its essential character as an asset held in trust for and equitably owned by Felice. Brown v. Hanger, 368 So.2d 63 (Fla. 3d DCA 1979); 33 Fla.Jur. Trusts § 74 (1960). She, not Burton  and therefore not Charlotte  was entitled to the money.
For these reasons, the judgment below is reversed to the extent of $1,500 and the cause remanded with directions to award that amount to the appellant. As to the remaining $505.38, the judgment is affirmed.[7]
Affirmed in part, reversed in part.
NOTES
[1] The prior appellate history of this case stretches from Ginsberg v. Ginsberg, 113 So.2d 565 (Fla. 3d DCA 1959), and Ginsberg v. Ginsberg, 127 So.2d 137 (Fla. 3d DCA 1961), to Goldstein v. Ginsberg, 399 So.2d 415 (Fla. 3d DCA 1981).
[2] An initial challenge by Ginsberg to Charlotte's right to the $505.38 difference has been withdrawn and only $1,500 is now in issue.
[3] James v. Commercial Bank at Apopka, 310 So.2d 399 (Fla. 4th DCA 1975) involves the converse situation, holding that garnishment properly lay against funds which were "in truth and in fact," 310 So.2d at 400, owned by the judgment debtor, even though they were under deposit in the name of another. See 38 C.J.S. Garnishment § 80, supra, at nn. 68-71. It thus stands for the exact proposition we apply here, that the real rather than the nominal ownership of a bank account controls the result.
[4] Contrary to the appellees' contention, the Gladden case cannot be meaningfully distinguished on the ground that the account was denominated "[the husband], agent" instead of "Burton Ginsberg," as in this case. This is so because, as the Alabama court itself recognized, the addition of the word "agent," without more, does not affect the status of the account as a general rather than a special one. 10 Am.Jur.2d Banks and Banking § 367 (1963), and cases collected at n. 17. See, Coyle v. Pan American Bank of Miami, 377 So.2d 213 (Fla. 3d DCA 1979); 5 Fla.Jur.2d Banks and Lending Institutions §§ 148, 152-53 (1978). Gladden therefore is merely an application (although an a fortiori one) of the rule that the beneficial ownership of the money in any general account is decisive. See 38 C.J.S. Garnishment § 80, supra, at nn. 86-88; note 3, supra.
[5] The Jones holding to this effect is based on a legal view of the husband-wife relationship which no longer obtains in Florida, see Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981), and may therefore itself be outmoded. The insurable interest question is, however, one which concerned only Burton and the insurer, which did not raise the issue in making payment. It does not affect the quite different problem, which is dispositive of this case, of who, between Burton and Felice, is entitled to the proceeds.
[6] As indicated in the Doss case, Burton would, in theory, have a right to recover from Felice the proportionate amount of the premium he paid Allstate for coverage on the statue. Charlotte made no claim below for his sum, however (which could be no more than nominal in any case), and we therefore do not further consider the issue. See Dober v. Worrell, 401 So.2d 1322 (Fla. 1981.)
[7] Note 2, supra.