**ATLAS ASSURANCE COMPANY OF AMERICA, Petitioner,**

v.

**Jeannie MISTIC f/k/a Jeannie Rutzebeck, Respondent.**

No. S–3727.

Supreme Court of Alaska.

Aug. 9, 1991.

Rehearing Denied Jan. 10, 1992.

Timothy R. Byrnes, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for petitioner.

Sema E. Lederman, Hansen & Lederman, Anchorage, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

We granted Atlas Assurance Company's petition for review in part, specifying the following issues for review:

(1) When an insured intentionally burns down a house, is an innocent co-insured nevertheless entitled to recover some portion of the insurance proceeds?

(2) What portion of the proceeds may the innocent co-insured recover?

(3) Does the validity of the innocent insured's claim affect the insurer's right of subrogation?

(4) Under the facts of this case, what effect, if any, did the divorce decree and property division ordered between the co-insureds have upon the respective rights of the parties herein?

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jeannie Mistic and Del Kirk Rutzebeck were married in 1980. They had two children. The couple purchased real property in Halibut Cove on which they built a house. They lived there until Mr. Rutzebeck burned down the house in 1987.[1] They owned the house jointly as tenants in common. First Interstate Bank (First Interstate) held a deed of trust note as mort-

gagee. The property was insured by Atlas Assurance Company of America (Atlas) for $42,000, with First Interstate named as loss payee. The damage to the property exceeded its insured value. The damage was later estimated to be $100,000.

Mistic executed a proof of loss, asking that First Interstate be paid. Atlas paid First Interstate $42,378.04 to satisfy the loan and received an assignment of the deed of trust note and deed of trust. Payments on the note ceased in October 1987. Mistic and Rutzebeck were divorced on June 29, 1988. Issues of child custody, child support, spousal support, damages, and division of property were reserved for later adjudication. On September 30, 1988, Atlas filed a notice of default on the deed of trust note, beginning foreclosure of only Rutzebeck's interest in the property.

On December 22, 1988, Judge Rene J. Gonzalez entered judgment on the issues of property division, child custody, child support, and waste of marital property. He awarded the Halibut Cove property to Mr. Rutzebeck, but ordered that he sell it and "deposit the proceeds into the registry of the court after paying all liens and encumbrances thereon and costs of sale for determination and award of a lump sum child support payment...." In dividing the marital property, Judge Gonzalez found that:

> While there is a presumption that an equal division of marital property is a just division, in this case, the Defendant [Rutzebeck] willfully destroyed and wasted substantial marital property and Plaintiff is entitled to one-half the value of the property destroyed in addition to her share of the marital estate under an equitable distribution.

Pursuant to the court's direction, Mistic quitclaimed her interest in the property to Rutzebeck. She has not appealed the prop-

---

1. Mistic refuses to concede in her brief that Mr. Rutzebeck intentionally burned down the house. Judge Rene J. Gonzalez in their later divorce action found that Rutzebeck "willfully and intentionally" destroyed the property. Judge Kar-

en L. Hunt in this action entered summary judgment that Rutzebeck intentionally burned down the house. We declined review of that question.

erty division.[2]

On December 30, 1988, Mistic filed suit against Atlas for allegedly refusing to pay her or her mortgagee First Interstate under the contract of insurance. Judge Hunt granted a temporary restraining order postponing the foreclosure sale, and Atlas voluntarily postponed the sale indefinitely after that order expired.

In October 1988 Rutzebeck sold the property and paid Atlas the full amount owing on the deed of trust note. He then deposited the balance of the proceeds with the court in accordance with Judge Gonzalez's order.

On November 30, 1989, Judge Hunt granted summary judgment on the following issues: (1) that Atlas had a right to deny any claim of Rutzebeck because he intentionally destroyed the insured property; (2) that Rutzebeck intentionally caused the fire; (3) that Atlas had a right to subrogate to Rutzebeck's interest in the property; (4) that Atlas breached its insurance policy agreement with Mistic. This last issue is the subject of review.

## II. STANDARD OF REVIEW

This review involves questions of law. Therefore our "duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. DISCUSSION

A. When an Insured Intentionally Burns Down a House, is an Innocent Co-insured Nevertheless Entitled to Recover Some Portion of the Insurance Proceeds?

■ The parties agree that an innocent co-insured is entitled to recover unless the policy clearly precludes it. Case law supports this position.

■ Public policy dictates that an insured who intentionally sets fire to property covered by the insurance contract may not recover thereon. *See Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska 1988). We have not addressed whether an innocent co-insured is likewise precluded from recovery. "Generally speaking, the determination of the question whether an innocent coinsured may recover on fire insurance after another coinsured has intentionally burned the covered property ordinarily depends upon whether the interests of the coinsureds are joint or severable." Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured*, 11 A.L.R. 4th 1228, 1229 (1982). Modern authority favors allowing recovery by an innocent co-insured unless the policy clearly states otherwise:

> The minority view ..., previously the majority view, denies an innocent spouse recovery either because the underlying property ownership is an indivisible tenancy by the entirety, or because the

**2.** Judge Gonzalez valued and divided the marital property as follows:

| Mistic | Value | Rutzebeck | |
|---|---|---|---|
| Fishing boat equity | $ 60,000 | Halibut Cove property | $58,000 |
| Fishing boat lease | $ 10,000 | ($100,000 value remaining after | |
| Fishing boat accounts | $ 31,636 | fire minus $42,000 debt to Atlas) | |
| Life insurance | $ 10,000 | Jeep | $ 6,000 |
| Freezer truck | $ 10,000 | Four-wheeler | $ 2,000 |
| Ford Bronco | $ 1,000 | Skiff & motor | $ 5,000 |
| TOTAL | $122,636 | TOTAL | $71,000 |

Thus the total marital estate as listed was $193,636. Since the value of the property destroyed was $100,000, the marital estate would have been worth $293,636 if Rutzebeck had not burned the house. If the property had been divided equally, Mistic would have received $146,818. She ended up with $24,182 less than that.

If Judge Gonzalez had divided the marital estate as listed equally and then added $50,000 to Mistic's share as one-half the value of the marital property destroyed, Mistic would have received $146,818, exactly what she would have gotten had there been no fire and an equal division. Judge Gonzalez did not believe an equal division was equitable under the circum-

wrongdoing of one spouse is imputed to the other under a theory of oneness of the married couple. The present majority view ... allows an innocent or divorced spouse to recover even though the co-insured spouse is at fault. The majority view courts reason that policy language excluding coverage must be explicit or that what is in question is the spouse's interest in the insurance policy, not the interest in the real property, or that the fault of the wrongdoing spouse cannot be imputed to the innocent spouse.

*Commercial Union Ins. Co. v. State Farm Fire & Casualty Co.,* 546 F.Supp. 543, 546 (D.Colo.1982) (citations omitted) (rights and obligations under homeowner's insurance policy are several and not joint. Therefore innocent spouse may recover even though co-insured spouse is at fault). Other courts have found that the innocent co-insured's rights and obligations are severable, focusing on the parties' intent in forming the insurance contract. *E.g. Richards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983) (obligation of insureds to "use all reasonable means to save and preserve property" was several, not joint. Therefore innocent co-insured spouse was entitled to recovery if she could prove she did not participate in wrongful conduct); *St. Paul Fire & Marine Ins. Co. v. Molloy,* 291 Md. 139, 433 A.2d 1135 (1981) (unless policy clearly shows parties intended that obligations of co-insureds be joint, they will be treated as several and innocent co-insured may recover); *Samhammer v. Home Mut. Ins. Co.,* 120 A.D.2d 59, 507 N.Y.S.2d 499, 503 (1986).

■ Where policy language clearly precludes recovery if any of the co-insureds wrongfully cause the loss, the courts will deny recovery to an innocent co-insured. *E.g. Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139, 1140 (3d Cir.1985); *Amick v. State Farm Fire & Casualty Co.,* 862 F.2d 704, 705–06 (8th Cir.1988) (provision barring recovery due to fraud of any co-insured not void as against public policy); *Sales v. State Farm Fire & Casualty*

*Co.,* 849 F.2d 1383, 1385 (11th Cir.1988); *Bryant v. Allstate Ins. Co.,* 592 F.Supp. 39, 41 (E.D.Ky.1984).

■ In this case Atlas concedes that "it is not clear" from the language of the policy whether Mistic is precluded from recovery. The policy's concealment or fraud provision states: "We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." No concealment or fraud is alleged, and there is no provision specifically barring recovery for losses caused by an intentional act of any insured. Under the modern view, Mistic's rights under the contract of insurance are considered severable and she is entitled to recover.

### B. What Portion of the Proceeds May the Innocent Co-insured Recover?

■ Atlas contends that it is entitled to prevail no matter what portion of the policy proceeds the innocent co-insured may be entitled to recover because its subrogation rights are a distinct question. In the alternative, Atlas suggests that the innocent co-insured's recovery should be limited to no more than half the damages or half the policy limits. Atlas argues that allowing the innocent co-insured to recover full proceeds would encourage fraud because an insured could convey a fractional interest in property to a co-insured and then burn the property, thereby guaranteeing payment of the entire proceeds to the co-insured. Full recovery would also confer a windfall on an innocent co-insured who receives the full value of the property above her interest therein.

Mistic argues that she is entitled to half the policy limits under the contract of insurance. She bases this on case law from other jurisdictions and her interpretation of the policy language.

The contract itself contains a clause limiting liability where there is more than one insured. It reads:

stances. However, he either made a mistake in his calculations or neglected to factor in the marital property destroyed.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. for an amount greater than the interest of a person insured under this policy; or

b. for more than the limit of liability that applies.

Thus by its own terms the contract limits payment to a co-insured to the lesser of the person's interest or the contract limits. Mistic's interest in the property at the time the claim was paid was greater than the contract limits, so the upper limit would be $42,000.

"The vast majority of courts which have reached this issue, and which have allowed recovery at all, have held that the innocent coinsured may only recover one-half of the insurance proceeds, up to the policy limits." *Lewis v. Homeowners Ins. Co.*, 172 Mich. App. 443, 432 N.W.2d 334 (1988) (footnote omitted). For example, in *Republic Ins. Co. v. Jernigan*, 719 P.2d 331, 333 (Colo. App.1985), the court determined that a husband and wife still held the property as joint tenants after the husband intentionally burned it. Therefore the wife, as owner of an undivided one-half interest, was entitled to only one-half the damages claimed, "limited of course by the total policy limits." *Id.* at 333–34.

At least one court has allowed the innocent spouse to recover one-half of the proceeds even where she continued to live with the wrongdoer spouse after the fire, reasoning that any benefit to the wrongdoer was indirect. *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896, 907 (1986).

Occasionally courts allow the innocent spouse to recover the full amount of the damage, but only if the wrongdoer spouse died in the fire. *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136 (Ind.App. 1981); *Felder v. North River Ins. Co.*, 148 Wis.2d 130, 435 N.W.2d 263 (App.1988). These courts reason that there is no danger of the wrongdoer profiting by the wrongdoing. *Id.* 435 N.W.2d at 266; *Liggett* at 140.

Mistic seeks only one-half the policy limits, which is less than one-half the loss.

Few of these cases discuss the effect on the innocent spouse's share of the proceeds if the insurer pays a mortgagee. In North Carolina the spouse is entitled to half the amount of the loss after the mortgagees are paid. *Lovell v. Rowan Mut. Fire Ins. Co.*, 302 N.C. 150, 274 S.E.2d 170 (1981). In *Lovell* the insurer later foreclosed on the mortgages, but the court declined to determine the rights to the foreclosure proceeds since the question was not before it. *Id.* 274 S.E.2d at 174. In that case, unlike the present case, the policy limits were higher than the mortgage debt, so there was something left over to split in half.

We conclude that the innocent co-insured in this case is entitled to recover one-half of the damages or one-half of the contract limits, whichever is less, in accordance with the terms of the contract of insurance. Thus, Mistic is entitled to recover $21,000.

C. Does the Innocent Insured's Claim Affect the Insurer's Right of Subrogation?

■ Atlas argues that it is entitled as matter of equity to subrogate against an arsonist, and that this is an exception to the general rule that an insurer may not subrogate against its own insured. Atlas contends that it was proceeding solely against Rutzebeck's separate assets, and that Mistic has no right to demand that it waive its subrogation rights. If the foreclosure had followed the normal course, Atlas would have only been substituted as owner of Rutzebeck's half of the property. Atlas says it voluntarily waived any claim against Mistic's half interest.

Mistic argues that Atlas cannot subrogate against its own insured unless the contract expressly allows it. She argues that the contract only allows Atlas to subrogate against her if it denies her claim, which it did not, and that absent an express exclusion, the common law rule applies. Mistic argues that Atlas could have either brought a declaratory judgment action to determine its rights under the contract or sued Rutzebeck. By accepting the full

amount of the mortgage from Rutzebeck, Atlas was unjustly enriched and defeated Mistic's reasonable expectations under the contract. Mistic urges that the proper approach would have been to require Atlas to sue Rutzebeck in order to recoup its losses.

■ In Alaska, "[i]t is well settled that an insurer cannot recover by means of subrogation against its own insured." *Graham v. Rockman*, 504 P.2d 1351, 1356 (Alaska 1972). "Since subrogation is an equitable doctrine, equity principles apply in determining its availability." *Alaska Ins. Co. v. RCA Alaska Communications, Inc.*, 623 P.2d 1216, 1217 (Alaska 1981) (tenant is co-insured of landlord, therefore insurer may not subrogate against tenant for tenant's negligence in starting fire).

■ An insurer may waive subrogation rights against a co-insured by express contract language. *See State v. Oriental Fire & Marine Ins. Co.*, 776 P.2d 776 (Alaska 1989) (waiver provision by its own terms extends only to risks covered by the policy). Atlas has not done this. The mortgage clause of the Atlas contract contains the following language:

> If we pay the mortgagee for any loss and deny payment to you:
>
> a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
>
> b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
>
> Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

This is not a waiver of subrogation rights, but an express assertion of a right to subrogate against the insured in certain circumstances. It does not apply to Mistic's claim because Atlas did not deny her claim. What this means in the context of this case is that when Atlas paid the approximate sum of $42,000 to First Interstate, Atlas could not be subrogated for the $21,000 of that sum which was attributable

to Mistic's obligation to pay the deed of trust note. Atlas' right to subrogate as to the remainder of the sum which it paid is not an issue, thus Atlas stands in the position of First Interstate as the holder of a secured deed of trust note only as to the half of the sum which it paid.

D. Under the Facts of this Case, What Effect Does the Divorce Decree and Property Division Have Upon the Respective Rights of the Parties?

■ Atlas argues that the property division negates any claims Mistic may have had. Because Atlas proceeded only against Mr. Rutzebeck's half of the property, Atlas claims, any harm to Ms. Mistic must be premised on an interest she had in his portion of the property. Atlas contends that Judge Gonzalez's award of the property to Rutzebeck extinguished any right Mistic had in the property. Atlas also argues that Mistic is bound by Judge Gonzalez's orders under principles of res judicata and collateral estoppel because she never appealed them.

Mistic argues that the divorce did not void Atlas' obligation to pay her claim under the contract. She argues that the parties' interests must be analyzed as of the date of her claim; otherwise it would encourage insurance companies to delay paying claims. Mistic asserts that Atlas did not pay her claim, but rather it bought an assignment of the deed of trust. She claims that what she lost was one-half the value of the lien because the marital estate was reduced by the amount of the lien. Mistic argues that her interest in the proceeds is a personal property interest, so it does not depend on her remaining a record owner of the property.

■ The issue we asked the parties to brief in this section is what effect the divorce and property division had on the rights of the parties in this case. We conclude that the property division had no effect on the rights of the parties as far as Mistic's claim against Atlas is concerned. The ultimate issue is whether Atlas breached the insurance contract by paying the mortgagee and taking an assignment of

the deed of trust note and deed of trust, without ever paying Mistic or crediting Mistic with the value of her claim.

Judge Hunt ruled that Atlas did breach the contract. She explained:

It is undisputed that plaintiff made a timely and proper claim for her insured interest under the policy. Defendant never denied the claim, which denial is a condition precedent to subrogating itself to her interest in the insured property. Therefore, when it paid the mortgagee the full value of the note, $21,000 of the amount paid was payment of plaintiff's claim under the policy. When Atlas bought the note, it had a real value of $21,378.04. When the property sold and Atlas was paid as holder of the Deed of Trust Note, it was entitled to receive only the $21,378.04 value of the note plus costs, etc. However, it was paid and accepted the full $42,378.04 value of the note thereby, in fact, receiving the benefit of subrogating itself to plaintiff's claim. Because it has not denied her claim (and having demonstrated no basis for doing so), it breached its contract with plaintiff.

Thus it was the failure of Atlas, when accepting payment from Rutzebeck, to pay Mistic or credit Mistic with the value of her claim, which Judge Hunt believed triggered the breach. We agree. Although this occurred after the divorce and property division, the timing is irrelevant.

Mistic's rights were fixed as of the time of the insured loss. Pursuant to Judge Gonzalez's order, Mistic quitclaimed her interest in the Halibut Cove property to Rutzebeck. Her quitclaim deed to Rutzebeck did not purport to convey her interest in the insurance proceeds, nor was this interest acknowledged or divided by the decree. We conclude that the decree has no effect on the obligation of Atlas to pay Mistic her half of the insurance proceeds.

Summary judgment on the issues under review herein is AFFIRMED. This case is REMANDED for further proceedings.