**STATE FARM AUTOMOBILE INSURANCE COMPANY,**
Appellant/Cross–Appellee,

v.

**Tammy L. RAYMER,** Appellee/Cross–Appellant.

Nos. S–8296, S–8315.

Supreme Court of Alaska.

March 26, 1999.

Joe M. Huddleston, Hughes Thorsness Powell Huddleston & Bauman LLC, for Appellant/Cross–Appellee.

David Karl Gross, Law Offices of Murphy L. Clark, Anchorage, for Appellee/Cross–Appellant.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

EASTAUGH, Justice.

## I.  *INTRODUCTION*

In Alaska, an innocent co-insured may recover insurance proceeds for his or her interest in property even if the other co-insured is responsible for its destruction. But Alaska law also requires an insured to have an "insurable interest" in the property to recover insurance proceeds. The superior court granted summary judgment to Tammy Raymer on her contract claim against State Farm, concluding that she was an innocent co-insured who had an insurable interest in a truck her husband, Michael Raymer, may have burned. It awarded Tammy one-half the value of the truck and attorney's fees and costs. Because we conclude that there are no genuine, material fact disputes about whether Tammy Raymer had an insurable interest in the truck, we affirm and remand to require the fact finder to determine the extent of that interest.

## II.  *FACTS AND PROCEEDINGS*

On April 30, 1994, Michael Raymer drove his 1988 Chevrolet pickup truck to the Sam's Club parking lot at the Northway Mall in Anchorage. Michael parked the truck in the parking lot with "For Sale" signs in the window. Around 9:15 p.m. passers-by noticed that the truck was on fire and attempted to extinguish the fire. Someone had intentionally set fire to the truck by attaching a time fuse to a plastic gasoline can placed in the passenger compartment.

On May 2 Michael and Tammy Raymer filed a claim with their State Farm agent, Ronald Vea. After State Farm wrote the Raymers several letters stating that the investigation was not complete, State Farm lawyers asked for additional information and scheduled examinations under oath for Michael and Tammy in August 1994. State Farm rescheduled the examinations for September 3. After examining the Raymers under oath, State Farm requested additional information and additional examinations under oath from the Raymers.

Rather than attend the second set of examinations under oath, the Raymers sued State Farm, Ronald Vea, and other State Farm representatives, asserting various breach of contract claims and bad faith claims.

In 1996 Tammy moved for partial summary judgment on her breach of contract claim. She argued that even if Michael were responsible for the arson, she was an inno-

cent co-insured. Michael also moved for summary judgment on the breach of contract claim. The superior court granted Tammy's motion, concluding that she was an innocent co-insured under *Atlas Assurance Co. of America v. Mistic;*[1] it awarded her one-half of the insurance proceeds plus attorney's fees and costs. But it concluded that there were genuine issues of material fact about Michael's involvement in the truck's destruction and denied Michael's motion.[2]

State Farm appeals the grant of partial summary judgment to Tammy Raymer. Tammy's cross-appeal argues that she should have received the full value of the truck, enhanced attorney's fees, and all requested costs.

## III. *DISCUSSION*

### A. *Standard of Review*

"In reviewing a grant of summary judgment, this court must determine whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[3] We review de novo an order granting summary judgment.[4]

### B. *Is There a Genuine Fact Issue about Whether Tammy Raymer Had an Insurable Interest in the Truck?*

State Farm argues that the superior court erred in finding as a matter of law that Tammy had an insurable interest in the truck. State Farm asserts that there is no evidence that Tammy had a legal or equitable interest in the truck. It argues that the truck was the separate property of Michael and that there is no evidence that Michael and Tammy intended to make the truck marital property. Tammy argues that although she was not on the truck's title, she had an insurable interest in the truck because she suffered loss when the truck was destroyed. She also argues that State Farm is estopped from raising "the insurable interest defense," and that State Farm waived this defense by not raising it in its answer.

Alaska Statute 21.42.030(a) provides: "A contract of insurance of property ... may not be enforced as to the insurance except for the benefit of persons having an insurable interest in the things insured at the time of the loss." The statute defines "insurable interest" as "an actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."[5]

Applying this statutory definition, the superior court concluded that Tammy had an insurable interest in the truck:

> The Court finds no authority which states that the co-insured's name must appear on the title of the property. Furthermore, there is no dispute that Tammy Raymer would suffer financially if a loss were not covered by the insurance policy. Therefore, Tammy Raymer has an insurable interest in the pickup, even though her name was not on the title.

██ We first note that if it were marital property,[6] Tammy would unquestionably have an insurable interest in the truck.[7] But

---

1. 822 P.2d 897 (Alaska 1991).

2. We assume for purposes of discussion that Michael Raymer did set fire to his truck. *See Thoma v. Hickel*, 947 P.2d 816, 818 (Alaska 1997) ("In reviewing grants of summary judgment, the facts are to be viewed in the light most favorable to the losing party, and reasonable inferences are to be resolved in favor of the losing party.") (citing *Walt v. State*, 751 P.2d 1345, 1348 n. 2 (Alaska 1988)).

3. *Nielson v. Benton*, 903 P.2d 1049, 1051–52 (Alaska 1995) (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

4. *See id.* at 1052 (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

5. AS 21.42.030(c).

6. "Marital property" is property owned by one or both of the parties to a divorce which the court may divide without making a special finding that the balancing of the equities between the parties so requires. In contrast, "separate property" is property owned by one of the parties to a divorce which the court may not invade without such a finding. *See* AS 25.24.160(a)(4).

7. This interest would be contingent, because whether property is "marital" normally becomes relevant only in context of divorce or dissolution.

we conclude that there is a genuine fact issue about whether the truck was marital property. Michael purchased the truck in Colorado in September 1993, before he and Tammy married. He insured the truck through the United Services Automobile Association (USAA). Michael and Tammy married on February 11, 1994. Michael dropped his USAA insurance coverage and Michael and Tammy purchased insurance for the truck from State Farm, effective February 12, 1994; State Farm had been Tammy's insurance company for several years. Michael did not add Tammy to the truck's title. Tammy and Michael point to other evidence that supports their argument that they intended the truck to be marital property.

State Farm relies heavily on the fact that Michael did not add Tammy to the title of the truck even though Tammy added Michael to the title of her Chrysler LeBaron in December 1993. State Farm argues that this shows that the Raymers did not intend to make the truck marital property.

■ Property acquired by one spouse prior to marriage is the separate property of that spouse.[8] "Separate property can become marital property where that is the intent of the owner and there is an act or acts which demonstrate that intent." [9] Although there is ample evidence, including the joint insurance policy, that Michael and Tammy intended to treat the truck as marital property, the fact that they changed the title of the car and not the truck raises a genuine fact issue about whether they intended the truck to become marital property. It is also unclear from the record whether Michael made payments on the truck with marital funds

before the fire. Although Tammy argues that she also paid for the truck, the only supporting evidence she offered was a check used to pay off the truck loan several days after the Raymers sued State Farm.

■ Notwithstanding these fact disputes, we conclude that Tammy had a sufficient beneficial interest in the truck to give her an insurable interest, even though she was not a legal owner of the truck.

> [T]itle is not the sole test for determining an insurable interest. It may be a special or limited interest, disconnected from any title, lien or possession, whereby the holder of the interest will suffer loss by its destruction, etc., and that will entitle him to protect the interest by insurance.[10]

We agree with the Utah Supreme Court that "insurable interest" is a fairly broad concept and can encompass contingent and beneficial interests:

> Generally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction. If he would sustain such loss, it is immaterial whether he has, or has not, any title in or lien upon, or possession of, the property itself.
>
> ... Any interest in property, legal or equitable, qualified, conditional, contingent, or absolute, or merely the right to use the property, with or without the payment of rent, is sufficient.[11]

Other courts, in determining whether an insurable interest exists, have also considered whether a party has an equitable or contingent interest.[12]

---

8. *See* AS 25.24.160(a)(4); *Wanberg v. Wanberg*, 664 P.2d 568, 570–71 (Alaska 1983).

9. *Chotiner v. Chotiner*, 829 P.2d 829, 832 (Alaska 1992).

10. *Republic Ins. Co. v. Martin*, 182 Ga.App. 390, 355 S.E.2d 694, 696 (1987) (holding that ex-husband who had deeded property to ex-wife still had equitable interest in property because of continuing liability to lien holder sufficient for an insurable interest).

11. *Error v. Western Home Ins. Co.*, 762 P.2d 1077, 1081–82 (Utah 1988) (quoting *Hill v. Safeco Ins. Co.*, 22 Utah 2d 96, 448 P.2d 915, 916 n. 2 (1969), (internal quotation marks omitted)

quoting G. Couch, *Cyclopedia of Insurance Law* § 24.13 (2d ed.1960)).

12. *See Employers Nat'l Ins. Co. v. Holliman*, 287 Ala. 123, 248 So.2d 717, 721 (1971) ("[W]hat constitutes an insurable interest under an automobile liability policy involves a determination as to whether the named insured would be liable for injury to persons or property which might arise out of the operation of the described automobile."); *Alberici v. Safeguard Mut. Ins. Co.*, 444 Pa.Super. 351, 664 A.2d 110, 113 (1995) ("Upon execution of an agreement of sale, a purchaser of real estate has an equitable title to property and may insure his or her interest therein. A purchaser's insurable interest is in the entire property ...." (citation omitted)).

In *Overton v. Progressive Insurance Co.,*[13] which is most directly on point and on which Tammy heavily relies, the wife alone had an insurance policy on the husband's car, which the husband intentionally burned. Relying on a Florida statute similar to AS 21.41.030, the court found that the wife had an insurable interest in the car:

> As a general principle, a wife who has a pecuniary or beneficial interest in her husband's property, or would have some disadvantage from its loss, has an insurable interest therein. The fact that appellant did not own the insured vehicle does not preclude her an insurable interest and coverage under the policy.[14]

The court did not analyze the basis of the beneficial interest, suggesting that the mere fact that the wife was the owner's spouse was enough.[15] The court remanded the case for a determination of the extent of the wife's insurable interest.[16]

Both parties cite *Error v. Western Home Insurance Co.*[17] The Utah Supreme Court there held that a husband who was not on the title of the house still had an insurable interest:

> Julie's ownership of the property gave Ray an insurable interest since the property's continued existence could possibly provide him with a more advantageous divorce settlement. At the very least, upon his second marriage to Julie, Ray gained an equitable interest in the property sufficient to constitute an insurable interest.[18]

But the court went on to conclude that because no evidence was offered concerning the value of that interest, the lower court did not err in valuing Ray's interest as "zero."[19]

Both cases support a conclusion that Tammy had an insurable interest in the truck as Michael's spouse. Even if the truck was Michael's separate property, it may be that its replacement would have to be purchased with joint or marital assets. We also agree with the reasoning of the *Error* court and hold that even if the truck was exclusively Michael's, it was an asset which, in the event of divorce, a court might invade in order to divide the couple's property equitably. This interest was sufficient for us to conclude that Tammy had an insurable interest satisfying AS 21.42.030.

■ Concluding that Tammy had an insurable interest in Michael's truck, albeit an equitable and contingent interest, does not conflict with the public policies behind the insurable interest doctrine. Statutes requiring an insurable interest were enacted to prevent insurance contracts from being used as a means of wagering, to prevent societal waste by discouraging unproductive contracts, and to reduce the incentive for the destruction of property to obtain insurance proceeds.[20] The superior court determined that Tammy was an innocent co-insured. There is no evidence that these public policies are implicated in this case.

Notwithstanding the genuine fact issue about whether the truck was marital property, we conclude that, at a minimum, Tammy's status as Michael's wife gave her an insurable interest in the truck. Because we so decide, there is no reason to address Tammy's estoppel and waiver arguments.

C. *Is There a Genuine Issue of Material Fact about Whether Tammy Raymer Is an Innocent Co-Insured?*

State Farm argues that there is a genuine fact issue about whether Tammy Raymer was an innocent party in regard to the arson. It asserts that Tammy's mere knowledge that Michael burned his truck would be sufficient to preclude recovery by Tammy. Furthermore, State Farm contends that it has not been able to complete its investigation in this case, and that discovery has been inadequate to uncover such evidence. It also argues that the burden of proof on this issue should be shifted to Tammy.

---

13.  585 So.2d 445, 446 (Fla.App.1991).

14.  *Overton v. Progressive Ins. Co.,* 585 So.2d 445, 448 (Fla.App.1991) (citations omitted).

15.  *See id.*

16.  *See id.* at 449.

17.  762 P.2d 1077 (Utah 1988).

18.  *Error,* 762 P.2d at 1082.

19.  *Id.*

20.  *See* Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 3.1(c) (1988).

Tammy correctly asserts that this is the first time that State Farm has raised these arguments. We will not consider new arguments not raised in the trial court, unless the issues establish plain error, or the issues (1) do not depend on new facts, (2) are closely related to other arguments at trial, and (3) could have been gleaned from the pleadings.[21] State Farm's argument that Tammy was not an innocent party does not meet this standard, and will not be considered here.

### D. Is Tammy Raymer's Interest in the Truck Equal to One-half of the Insurance Proceeds?

State Farm argues that the superior court erred in awarding Tammy one-half of the insurance proceeds and that the amount of any interest is a fact question for the jury. Tammy argues in her cross-appeal that because she was an innocent co-insured, the court erred in not awarding her the total value of the truck.

The superior court relied on *Atlas* in awarding Tammy one-half of the insurance proceeds. We held in *Atlas* that "the innocent co-insured in this case is entitled to recover one-half of the damages or one-half of the contract limits, whichever is less, in accordance with the terms of the contract of insurance." [22] But the innocent co-insured in *Atlas* owned the house jointly with her husband; they were tenants in common.[23] The evidence here does not permit us to say as a matter of law that Tammy's interest in the vehicle was equal to Michael's.

Alaska Statute 21.42.030(b) provides that "[t]he measure of an insurable interest in property is the extent to which the insured might be indemnified by loss, injury or impairment." We conclude that there is no basis on which the amount of Tammy's interest can be determined as a matter of law based on the record before us. If a fact finder concludes that the truck was marital property, then an award of one-half of the insurance proceeds may be correct.[24] Similarly, if the truck's replacement must be paid for from joint or marital assets, an award of half of the proceeds may also be justified. But Tammy has only established at this point that she had an insurable interest in the truck; the extent of that interest and the extent of her loss is unclear and, given the evidence in the record, must be determined by the fact finder.[25]

### E. Do Any Genuine Issues of Material Fact Relevant to Michael Raymer Preclude Summary Judgment for Tammy Raymer?

State Farm contends that the genuine issues of material fact that precluded summary judgment for Michael also should have prevented entry of partial summary judgment for Tammy. Beyond State Farm's arguments—addressed separately—that Tammy may not be innocent and that public policy demands that she should not recover because her award may benefit Michael, State Farm's only remaining contention is that the superior court should have denied summary judgment to Tammy on her contract claim for the same reason it denied summary judgment on the Raymers' bad faith claim.

The superior court found that, "[i]n view of the ongoing investigation of Mr. Raymer, the Court finds that it is a material question of fact whether State Farm's failure to pay Tammy Raymer's claim amounted to bad faith." State Farm does not explain why genuine disputes about State Farm's alleged bad faith were material to the breach of

21. *See Arnett v. Baskous*, 856 P.2d 790, 791 n. 1 (Alaska 1993) (citing *O'Callaghan v. State*, 826 P.2d 1132, 1133 n. 1 (Alaska 1992)).

22. 822 P.2d at 901. The claimant in *Atlas* did not ask for more than one-half of the policy limits. *See id.* at 900.

23. *See id.* at 898.

24. *See Brown v. Brown*, 914 P.2d 206, 209 (Alaska 1996) ("A ⁵⁰/₅₀ property split is presumptively just and is the starting point for application of the [*Wanberg* ] factors the court must consider.").

25. *See Overton*, 585 So.2d at 449 (remanding case for lower court to determine extent of insurable interest); *Error*, 762 P.2d at 1082 (concluding that because no evidence was offered concerning value of insurable interest, lower court did not err in valuing husband's interest as "zero").

contract claim. A mere absence of bad faith is not in itself a defense to a contract claim. State Farm does not elaborate on this argument, and we see no merit in it.

### F. Did the Superior Court Err by Not Holding Tammy's Award in Constructive Trust for Michael?

State Farm argues that any insurance proceeds payable to Tammy should be held in a constructive trust for Michael, and that she should not be allowed to receive them because it would violate the public policy against allowing a wrongdoer to benefit from his bad act. Tammy does not address this argument.

We have described the constructive trust doctrine as follows:

> The constructive trust may be defined as a devise [sic] used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. When a court of equity finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means, it takes such interest from the defendant and vests it in the wronged party.[26]

State Farm's argument is meritless. The case State Farm cites, *Ginsberg v. Goldstein*,[27] does not support imposing a constructive trust on any proceeds paid to Tammy. In *Ginsberg*, an ex-wife tried to garnish her ex-husband's bank account.[28] The bank account contained insurance proceeds collected for a statue that had belonged to the ex-husband's current wife.[29] The court held that the ex-wife could not garnish the proceeds because they actually belonged to the current wife and were being held in trust for her.[30] Although the court stated that the ex-husband had an insurable interest in the statue, his interest did not affect the question of who, as between himself and his current wife, actually owned the proceeds.[31]

In this case, no third parties are trying to collect the insurance proceeds from Tammy. And Michael has not cross-appealed, and does not argue that Tammy had no insurable interest in the truck or had less than one-half interest in the insurance proceeds. Because she had an insurable interest in the truck, Tammy is entitled to the insurance proceeds to the extent of that interest.[32] There is nothing "unfair" about allowing her to receive those proceeds, such that they must be held in constructive trust for Michael. We conclude that the superior court did not err in declining to impose the award with a constructive trust.

### G. Does Public Policy Preclude an Award to Tammy Raymer?

State Farm argues that Tammy's partial summary judgment violates public policy because the superior court may be rewarding a wrongdoer. State Farm argues that because Michael and Tammy are still married and functioning as one economic unit, any award to Tammy will benefit Michael. State Farm seems untroubled by the obvious inconsistency of this argument with its contention that Tammy's proceeds should be held in trust for Michael. Tammy argues that we decided the public policy issue in *Atlas*.

Although the husband and wife in *Atlas* had divorced after their house burned, we did not rely on that fact in concluding that the innocent co-insured could recover on fire insurance after her co-insured intentionally burned the property.[33] We first noted that public policy precludes recovery by one who burns his or her own property:

> Public policy dictates that an insured who intentionally sets fire to property covered by the insurance contract may not recover thereon. *See Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska

---

26. *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1335 (Alaska 1984) (quoting G. Bogart, *Trust and Trustees* § 471, at 3 (rev.2d ed.1978)).

27. 404 So.2d 1098 (Fla.App.1981).

28. *See id.* at 1099.

29. *See id.*

30. *See id.* at 1100–01.

31. *See id.*

32. *See* AS 21.42.030.

33. *See* 822 P.2d at 899–900, 902.

1988). We have not addressed whether an innocent co-insured is likewise precluded from recovery.[34]

We agree with these authorities. We noted in *Atlas* that, "[a]t least one court has allowed the innocent spouse to recover one-half of the proceeds even where she continued to live with the wrongdoer spouse after the fire, reasoning that any benefit to the wrongdoer was indirect." [35]

Other courts have also concluded that although there may be additional policy concerns when the innocent co-insured and the wrongdoer remain married, the equities favor the innocent spouse's recovery.[36] The Supreme Court of Georgia, in *Richards v. Hanover Insurance Co.*,[37] addressed these concerns by placing the burden on the co-insured claiming coverage to prove her non-participation in the alleged wrongful conduct. There may be merit to this approach. But we need not decide whether to adopt it, given the procedural context of this case.

We conclude that Tammy's recovery is not barred by public policy even though she remains married to Michael.

### H. *Attorney's Fees and Costs*

Because we remand for determination of the extent of Tammy's interest in the truck, it is not necessary to decide whether she should have been awarded enhanced attorney's fees and all requested costs.

### IV. *CONCLUSION*

We AFFIRM in part because the superior court did not err in granting partial summary judgment to Tammy Raymer holding that she was an innocent co-insured party who had an insurable interest in the truck. But we must VACATE the judgment and REMAND for determination of the extent of that interest.

---

**34.** *Id.* at 899.

**35.** *Id.* at 901 (citing *Maravich v. Aetna Life & Casualty Co.*, 350 Pa.Super. 392, 504 A.2d 896, 907 (1986)).

**36.** *See Krupp v. Aetna Life & Cas. Co.*, 103 A.D.2d 252, 479 N.Y.S.2d 992, 998 (1984); *Commercial Union Ins. Co. v. State Farm Fire & Cas. Co.*, 546 F.Supp. 543, 547 (D.Colo.1982).

**37.** 250 Ga. 613, 299 S.E.2d 561 (1983).